## In re RICHMOND METAL FINISHERS, INC.

**Civ. A. No. 84-0074-R.**
**Bankruptcy No. 83-01047-R.**

United States District Court,
E.D. Virginia,
Richmond Division.

April 3, 1984.

Jeanne M. Rickert, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Benjamin C. Ackerly, Dennis T. Lewandowski, Hunton & Williams, Richmond, Va., for appellant.

James R. Sheeran, Sheeran & Riedel, Richmond, Va., for appellee.

## OPINION

WARRINER, District Judge.

Appellant Lubrizol Enterprises, Inc., seeks reversal of a decision by the Bankruptcy Court to permit the bankrupt Richmond Metal Finishers, Inc., to reject a contract between Lubrizol and Richmond. 34 B.R. 521. Richmond had developed certain valuable technology in the metal finishing trade. The technology involved the coating of metal with materials to make the metal more valuable for various uses. Richmond agreed to sell the technology to Lubrizol and Lubrizol agreed to pay a royalty on sales made by it through use of the technology.[1]

Richmond reserved the right to make similar transfers of the technology to others. Richmond was also obligated under the contract to defend Lubrizol's right to the use and enjoyment of the technology by giving notice of any claims of invalidity and defending any claims of infringement.

At the time Richmond filed bankruptcy, no party had defaulted under the contract though no royalties had been paid or credited. A one-year prohibition against exploitation of the contract by Lubrizol had barely expired at the time bankruptcy was filed. Hence the absence of royalty payments was consistent with, not contrary to, the contract.

After filing bankruptcy, the debtor-in-possession sought to interest others in a similar contractual arrangement. Richmond was unsuccessful in these efforts and testified, through its president, that prospects showed no interest when he disclosed Lubrizol's involvement.

I was trying to sell the technology, and all interested parties that looked at it backed off because it was not clear title to the technology. I mean, I disclosed the Lubrizol agreement and they said, Well, until we can get that straightened out—nobody would fund us, in other words.

Transcript, pp. 7–8.

The president did not do a good selling job. He did not disclose to prospects the agreement itself. The objection raised by the prospects, no clear title, which apparently ended negotiations, finds no support in the contract itself. It is specifically non-exclusive. Richmond had and has "clear title to the technology." Nothing need be "straightened out" with respect to the Lubrizol contract to enable other prospective purchasers of the technology full and free rights to exploit it in competition with Lubrizol, Richmond, or any other purchasers.

In any event, the debtor-in-possession, thinking he could get a better price if the technology were free of the claims of Lubrizol, sought permission of the bankruptcy court to reject the Lubrizol contract. After briefing and oral argument the bankruptcy judge approved rejection. Lubrizol appealed and timely filed its brief. The time within which Richmond might have filed its reply brief has expired. The Court will consider the appeal on the present state of the record.

Lubrizol bases its appeal on two points: (1) the contract in question is not executory, therefore it may not be rejected; (2) rejection of the contract does not benefit the estate since such rejection does not inhibit Lubrizol in its right to exploit the technology.

The Minnesota Law Review article by Vern Countryman, 57 Minn.L.Rev. 439 and 58 Minn.L.Rev. 479 apparently is the most current authority on what contracts are executory contracts for purposes of rejection in bankruptcy. Having studied Countryman's dissertation, I am satisfied that the inquiry is not nearly so simple as I thought it was when last I was conversant with the concept in Hardy Dillard's contracts class.

---

1. While the terms of sale and purchase are more complicated than is written here, the essence is the same. Actually, Richmond was indebted to Lubrizol and the purchase price included the forgiveness of some of that indebtedness, forebearance as to portions of the indebtedness, and a credit against royalties as to the balance of the indebtedness.

The parties refer to the contract as a licensing contract. Here is what Countryman says with respect to this genre:

Where there is no express undertaking by the licensor, the agreement with the licensee may not be executory because the licensor may have fully performed merely by executing the license agreement. Thus a close question may be presented by a license to make and sell a patented product where another licensee undertakes to supply the product. Even in these close cases, however, there may be an implied undertaking by the licensor which brings all patent licenses within the ambit of an executory contract. It has been held in a patentee-licensor's infringement action against a third party that a final judgment adjudicating the patent invalid constitutes a "complete failure of consideration" amounting to an "eviction" which releases the licensee from any further obligation to pay royalties. Moreover, since the death of the doctrine of "licensee estoppel," the licensee can set up the invalidity of the patent as a defense when sued by the licensor for royalties due under the license. Hence, all patentee-licensors are now substantially in the position of having warranted to their licensees the validity of their patents. Although the sanction for the breach of such a warranty is only forfeiture of royalties rather than liability for damages, this continuing undertaking by the licensor is enough to justify the treatment of all unexpired patent licenses as executory contracts.

58 Minn.L.Rev. at 479. Professor Countryman cites as his only authority for this assertion Part I of his article at 57 Minn.L. Rev. 453.

His analysis is flawed by the fact that all of the cases available to him arose in the bankruptcy proceedings of a patent licensee. 58 Minn.L.Rev. at 504. The instant case, of course, involves bankruptcy of the licensor.

On the other hand he analyzed a number of cases much more nearly like the situation before the Court. These cases involve the sale of land. Especially analogous would be the sale of land with the retention of a purchase money deed of trust. There, as here, the subject of the contract has been conveyed and possession has been taken by the vendee. There, as here, the vendee has the obligation of making payment for the conveyance as provided in the contract. There, as here, the vendor has the benefit of receiving the periodic payments and has the *obligation* of defending the vendee's title. Despite the fact that the vendor in a purchase money deed of trust sale of real estate has the general warranty and English covenant obligations to the vendee, Countryman writes:

In the great bulk of [purchase money mortgage] cases, where the credit is extended by a bank or other third-party lender who takes a mortgage from the vendee, the mortgagee-lender has performed its obligation when it makes payment to the vendor or otherwise advances the purchase money. Even in 'title theory' jurisdictions, no formal conveyance of title from mortgagee to mortgagor is required if the mortgagor repays the debt at maturity. Hence the mortgage should not be viewed as an executory contract which the bankruptcy trustee of either the mortgagee or the mortgagor can reject.

In the rarer type of case, where the vendor of land is himself the purchase money mortgagee, including those cases where applicable non-bankruptcy law will treat the land sale contract as a mortgage, the situation seems no different. The vendor-mortgagee in either a title or lien theory state has fully performed when he has executed the deed and surrendered possession of the property. Ergo his mortgage also should not be treated as an executory contract.

This analysis of the purchase money mortgage of realty, which is equally applicable to the nonpurchase money mortgage after the mortgagee has advanced all he is obligated to advance, has apparently appeared self-evident to the parties involved. There seems to be no recorded instance of attempted assumption or re-

jection by a receiver for or a trustee of either mortgagor or mortgagee.

The obligations of the vendor of real estate to defend the purchaser's title is no more onerous than the obligation of the vendor of technology to defend the vendee's right to exploit it. Nor is it a case where the obligation is merely implied in one case and is explicit in the instant case. The obligation is explicit in both cases.

*In Re The Select-A-Seat Corporation,* 625 F.2d 290 (9th Cir.1980) is cited as pertinent to the inquiry. There are a number of similarities between that case and the one before me. A major difference, however, is that Select-A-Seat had sold to Fenix an *exclusive* right to exploit the ticket-selling procedure at issue in the contract.

> Because of the exclusive nature of the license which Fenix received, Select-A-Seat was under a continuing obligation not to sell its software packages to other parties. Violation of this obligation would be a material breach of the licensing agreement. Cf. *In Re American Magnesium Co.,* 488 F.2d 147, 152 (5th Cir.1974) (agreement to refrain from action as executory). The licensing agreement was executory; accordingly, the bankruptcy court properly considered the trustees' motion.

In the instant case, the conveyance to Lubrizol is not exclusive; Richmond has no obligation to refrain from licensing. Richmond does have the obligation of defending the title of Lubrizol, as did Select-A-Seat. Id. at 291. But this obligation was not cited by the court in Select-A-Seat as a basis for finding the contract executory. Quite properly not, since such a construction of the contract would hold all conveyances of real estate, other than a quit-claim deed, as an executory contract, an obvious absurdity.

It is clear that every case must be determined on the basis of the particular facts and circumstances of the case. There is no rule that all licensing contracts are execu-

tory. There is no rule that all sales of land are nonexecutory. The rule is to analyze the facts and circumstances of a given case and attempt to arrive at a decision as to whether in fact and in law a given case is more analogous to those where no executory contract has been found or more nearly analogous to those where an executory contract has been discerned. Applying this analysis and on the reasoning, (though not necessarily on the conclusion) of Professor Countryman, I find the contract to be essentially nonexecutory.

While it is not clear from the opinion below, I must assume that the order rejecting the contract was not intended to affect Lubrizol's ability to proceed to exercise its non-exclusive property right. Nor would rejection relieve Lubrizol of its obligation to pay the commission or royalty due. If this be the case, and it is difficult to conceive of the court having power in a summary proceeding to strip Lubrizol of the intellectual property it purchased from Richmond, then all the rejection would accomplish is to relieve Richmond of its residual obligation to defend Lubrizol's title. While it is conceivable that this obligation could be onerous, it is not onerous at the present time.[2] More to the point, the "business judgment" which prompted the rejection was the refusal of other prospects to consider purchasing the technology so long as the matter with Lubrizol was not "straightened out."

But the matter with Lubrizol *is* straight and I cannot see how removing Richmond's obligation to defend Lubrizol's title makes the technology any more marketable than it was before. There is no testimony that would support such a supposition. If Lubrizol had the right to assign the technology with the assignee having Richmond's obligation to defend the title as a part of the package it purchased, then, as to Lubrizol, the technology would be more marketable. But a termination of Richmond's obligation to Lubrizol would have, at best, a marginal effect upon the technology's mar-

---

**2.** Moreover, Lubrizol in its brief purports to waive any obligations placed on Richmond by the contract.

ketability to others. Indeed, a defense of Lubrizol's title will redound to their bene-·fit. Thus it appears to me that there is no burden nor is there any basis for the exercise of business judgment favorable to the rejection. There simply is nothing in the contract, objectively, which could hinder the debtor's reorganization.[3]

Thus both on the ground that the contract is not executory and on the ground that its rejection will not benefit the estate, the contract should not be rejected.

The order is REVERSED and this action is REMANDED with directions to proceed accordingly.

And it is so ORDERED.

---

**3.** If a bankrupt had sold an asset and now wishes he had it back to re-sell at a better price, a "rejection" of the original sale would benefit the reorganization. But it would not be allowed.