In re LA ELECTRONICA, INC., Debtor.

LA ELECTRONICA, INC., Appellee,

v.

Olga CAPO–ROMAN, Appellant.

No. 92–2369.

United States Court of Appeals,
First Circuit.

Heard March 3, 1993.

Decided June 11, 1993.

Before BREYER, Chief Judge,
TORRUELLA and CYR, Circuit Judges.

CYR, Circuit Judge.

Olga Capo Roman ("Capo"), former vice president of appellee La Electronica, Inc. (hereinafter: "Electronica" or "chapter 11 debtor"), appeals the district court's reversal of a bankruptcy court order according "administrative expense" priority to certain alimony and support obligations due Capo by her former husband, Reinaldo Betancourt Veraits ("Betancourt"). We affirm.

I

## BACKGROUND

Capo filed for divorce from Betancourt in 1987. At that time, Betancourt was the president and sole shareholder of Electronica, and Capo served as its unsalaried vice-president and general manager. On July 22, 1988, Betancourt, Capo and Electronica entered into an unusual agreement ("Support Agreement") whereby Electronica assumed joint liability for the alimony and support payments Betancourt would be required to make to Capo under their divorce decree. As consideration for Electronica's assumption of liability under the Support Agreement, Capo agreed to resign her positions with Electronica.[1]

On June 28, 1989, Electronica filed a voluntary chapter 11 petition and discontinued its payments under the Support Agreement.[2] Approximately a year later, in June 1990, Capo requested that accrued alimony and support obligations under the Support Agreement be allowed as priority "administrative expenses" of the chapter 11 estate. *See* Bankruptcy Code §§ 503(a), (b)(1)(A); 11 U.S.C. § 503(a), (b)(1)(A). Electronica opposed the request.

Fernando Van Derdys with whom José A. Acosta Grubb and Fiddler, González & Rodríguez were on brief, for appellant.

William M. Vidal Carvajal with whom Antonio I. Hernandez–Rodriguez and Hernandez & Vidal were on brief, for appellee.

1. The bankruptcy court found that the Support Agreement was "entered into in arms-length negotiations, ..." and "executed with [a] clear and avowed corporate purpose ... to sever[ ] all corporate and managerial connections of Mrs. Capo with debtor, thus avoiding the *tense situations that could possibly arise* after the divorce of the sole stockholder of the company from his wife and corporate officer [sic] and General Manager of the company for many years." (Emphasis added.) As we affirm on an alternate ground relied upon by the district court, we need not determine whether Capo's resignation constituted valid consideration for Electronica's assumption of Betancourt's obligations under the Support Agreement.

2. The record does not indicate whether Betancourt continued to make payments under the divorce decree.

On November 29, 1990, the bankruptcy court confirmed a chapter 11 reorganization plan which provided, *inter alia*, that "[a]ny executory contract not specifically rejected on the confirmation of the Plan shall be deemed assumed." The court contemporaneously allowed Capo's request to recover accrued support and alimony payments under the Support Agreement. It ruled that the Support Agreement, as an executory contract not previously rejected, was assumed in accordance with the express terms of the reorganization plan. Based on its finding that the Support Agreement provided a continuing benefit to "the operation of the corporation … [by] avoiding internal struggles between two competing officers[,] which could be detrimental to the [debtor's continued] operation," the bankruptcy court concluded that the accrued support and alimony payments were "necessary for [the] preservation" of the chapter 11 estate, hence entitled to priority treatment as costs of administration under Bankruptcy Code § 503(b)(1)(A). Electronica appealed. The district court reversed on the ground that the Support Agreement was not an executory contract and, alternatively, that the marital support and alimony payments due Capo under the Support Agreement were not "actual, necessary costs and expenses of preserving the estate," within the meaning of Bankruptcy Code § 503(b)(1)(A).

## II

## DISCUSSION

### *"Administrative Expense" Priority*

 In the circumstances of the present case, we need not concern ourselves with whether the Support Agreement was an "executory contract,"[3] or whether Capo's prepetition resignation as Electronica's unsalaried vice-president and general manager constituted valid *consideration* for Electronica's assumption of Betancourt's obligations under the divorce decree. Even assuming sufficient consideration for the Support Agreement, Capo utterly failed to carry her burden of proof on the subsidiary proposition that the chapter 11 debtor's postpetition assumption of its president's financial obligations under the divorce decree constituted an "actual, necessary cost[ ] and expense[ ] of preserving the [*chapter 11*] estate," within the meaning of section 503(b)(1)(A); *see also In re Hemingway Transport, Inc.*, 954 F.2d 1, 5 (1st Cir.1992) ("the burden of proving entitlement to priority payment as an administrative expense … rests with the party requesting it"); *In re CIS Corp.*, 142 B.R. 640, 642 (S.D.N.Y.1992) (§ 503(b)(1)(A) claimant has burden of proving that its services provided an "actual, necessary" benefit to the debtor). As we have long recognized, "the traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." *Hemingway Trans.*, 954 F.2d at 4–5 (citing cases). In order to qualify for "administrative expense" priority under Bankruptcy Code § 503(b)(1)(A), therefore, "the consideration supporting the claimant's right to payment [must be] supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)

---

**3.** Subject to certain exceptions not presently relevant, an executory contract or unexpired lease may be assumed or rejected pursuant to a confirmed chapter 11 plan. *See* 11 U.S.C. §§ 365, 1123(b). Although the Bankruptcy Code does not define the term "executory contract," most courts adopt the position advanced by Professor Vern Countryman, defining an "executory contract" as one "under which the obligation [of] both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern A. Countryman, *Executory Contracts in Bankruptcy, Pt. I*, 57 Minn.L.Rev. 439, 460 (1973). A few courts, treating Professor Countryman's definition as "helpful but not con-

trolling," hold that the determination whether a contract is "executory" requires a more "functional" approach, "with an eye towards furthering the policies of the Bankruptcy Code." *See In re Richmond Metal Finishers, Inc.*, 34 B.R. 521 (Bkrtcy.E.D.Va.1983), *rev'd*, 38 B.R. 341 (E.D.Va.1984), *rev'd*, 756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *see also In re Magness*, 972 F.2d 689, 694 (6th Cir.1992); *In re Jolly*, 574 F.2d 349 (6th Cir.), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); *In re Booth*, 19 B.R. 53 (Bankr.D.Utah 1982). *See generally* David G. Epstein, et al., 1 *Bankruptcy* § 5-4(b) (1992) (surveying case law on both sides of issue).

(construing Bankruptcy Act forerunner to Code § 503(b)).

We can discern no economic "benefit" to the *chapter 11 estate* from its assumption of an "executory contract" to compensate Capo for *not* performing the unsalaried corporate services she previously performed for Electronica. To the extent Electronica derived economic benefit from Capo's resignation—*i.e.,* in the form of diminished risk of "disruption" to its business operations—law and logic suggest that the benefit derived *prepetition, viz, at the time her resignation was submitted,* not during the post-petition stewardship of the debtor-in-possession. Once Capo resigned, any presumed risk of internal "disruption" ceased. The same result would follow if the Support Agreement somehow were considered analogous to a severance agreement. *Id.* at 955 (whether debtor's severance pay claim based on unrejected contract is entitled to administrative priority depends on extent to which "consideration supporting the claim was supplied *during the reorganization.*") (emphasis added).

As the district court correctly reversed the allowance of appellant's request for "administrative expense" priority under Bankruptcy Code § 503(b)(1)(A), we affirm.[4]

*Affirmed.*

---

**4.** Our disallowance of Capo's § 503(a), (b)(1)(A) request is not intended to *foreclose its reconsider-* *ation* as a timely informal proof of unsecured claim.