UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2369
IN RE LA ELECTRONICA, INC.,

Debtor

LA ELECTRONICA, INC.,

Appellee,

v.

OLGA CAPO-ROMAN,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Cyr,

Circuit Judges.

Fernando Van Derdys with whom Jos A. Acosta Grubb and Fiddler,

Gonz lez & Rodr guez were on brief for appellant.

William M. Vidal Carvajal with whom Antonio I. Hernandez-Rodri-

guez and Hernandez & Vidal were on brief for appellee.

June 11, 1993

CYR, Circuit Judge. Olga Capo Roman ("Capo"), former
CYR, Circuit Judge.

vice president of appellee La Electronica, Inc. (hereinafter:

"Electronica" or "chapter 11 debtor"), appeals the district

court's reversal of a bankruptcy court order according "adminis-

trative expense" priority to certain alimony and support obliga-

tions due Capo by her former husband, Reinaldo Betancourt Veraits

("Betancourt"). We affirm.

I

BACKGROUND

Capo filed for divorce from Betancourt in 1987. At

that time, Betancourt was the president and sole shareholder of

Electronica, and Capo served as its unsalaried vice-president and

general manager. On July 22, 1988, Betancourt, Capo and

Electronica entered into an unusual agreement ("Support Agree-

ment") whereby Electronica assumed joint liability for the

alimony and support payments Betancourt would be required to make

to Capo under their divorce decree. As consideration for Electr-

onica's assumption of liability under the Support Agreement, Capo

agreed to resign her positions with Electronica.1

1The bankruptcy court found that the Support Agreement was
"entered into in arms-length negotiations, . . ." and "executed
with [a] clear and avowed corporate purpose . . . to sever[] all
corporate and managerial connections of Mrs. Capo with debtor,
thus avoiding the tense situations that could possibly arise

after the divorce of the sole stockholder of the company from his
wife and corporate officer [sic] and General Manager of the
company for many years." (Emphasis added.) As we affirm on an
alternate ground relied upon by the district court, we need not

2

On June 28, 1989, Electronica filed a voluntary chapter

11 petition and discontinued its payments under the Support

Agreement.2 Approximately a year later, in June 1990, Capo

requested that accrued alimony and support obligations under the

Support Agreement be allowed as priority "administrative expens-

es" of the chapter 11 estate. See Bankruptcy Code 503(a),(b)-

(1)(A); 11 U.S.C. 503(a),(b)(1)(A). Electronica opposed the

request.

On November 29, 1990, the bankruptcy court confirmed a

chapter 11 reorganization plan which provided, inter alia, that

"[a]ny executory contract not specifically rejected on the

confirmation of the Plan shall be deemed assumed." The court

contemporaneously allowed Capo's request to recover accrued

support and alimony payments under the Support Agreement. It

ruled that the Support Agreement, as an executory contract not

previously rejected, was assumed in accordance with the express

terms of the reorganization plan. Based on its finding that the

Support Agreement provided a continuing benefit to "the operation

of the corporation . . . [by] avoiding internal struggles between

two competing officers[,] which could be detrimental to the

[debtor's continued] operation," the bankruptcy court concluded

that the accrued support and alimony payments were "necessary for

determine whether Capo's resignation constituted valid consider-
ation for Electronica's assumption of Betancourt's obligations
under the Support Agreement.

2The record does not indicate whether Betancourt continued
to make payments under the divorce decree.

3

[the] preservation" of the chapter 11 estate, hence entitled to

priority treatment as costs of administration under Bankruptcy

Code 503(b)(1)(A). Electronica appealed. The district court

reversed on the ground that the Support Agreement was not an

executory contract and, alternatively, that the marital support

and alimony payments due Capo under the Support Agreement were

not "actual, necessary costs and expenses of preserving the

estate," within the meaning of Bankruptcy Code 503(b)(1)(A).

II

DISCUSSION

"Administrative Expense" Priority

In the circumstances of the present case, we need not

concern ourselves with whether the Support Agreement was an

"executory contract,"3 or whether Capo's prepetition resignation

3Subject to certain exceptions not presently relevant, an
executory contract or unexpired lease may be assumed or rejected
pursuant to a confirmed chapter 11 plan. See 11 U.S.C. 365,

1123(b). Although the Bankruptcy Code does not define the term
"executory contract," most courts adopt the position advanced by
Professor Vern Countryman, defining an "executory contract" as
one "under which the obligation [of] both the bankrupt and the
other party to the contract are so far unperformed that the
failure of either to complete performance would constitute a
material breach excusing the performance of the other." Vern A.
Countryman, Executory Contracts in Bankruptcy, Pt. I, 57 Minn. L.

Rev. 439, 460 (1973). A few courts, treating Professor Countrym-
an's definition as "helpful but not controlling," hold that the
determination whether a contract is "executory" requires a more
"functional" approach, "with an eye towards furthering the
policies of the Bankruptcy Code." See In re Richmond Metal

Finishers, Inc., 34 B.R. 521 (Bkrtcy. E.D. Va. 1983), rev'd., 38

B.R. 341 (E.D. Va. 1984), rev'd., 756 F.2d 1043 (4th Cir. 1985),

cert. denied, 475 U.S. 1057 (1986); see also In re Magness, 972

F.2d 689, 694 (6th Cir. 1992); In re Jolly, 574 F.2d 349 (6th

4

as Electronica's unsalaried vice-president and general manager

constituted valid consideration for Electronica's assumption of

Betancourt's obligations under the divorce decree. Even assuming

sufficient consideration for the Support Agreement, Capo utterly

failed to carry her burden of proof on the subsidiary proposition

that the chapter 11 debtor's postpetition assumption of its

president's financial obligations under the divorce decree

constituted an "actual, necessary cost[] and expense[] of pre-

serving the [chapter 11] estate," within the meaning of section

503(b)(1)(A); see also In re Hemingway Transport, Inc., 954 F.2d

1, 5 (1st Cir. 1992) ("the burden of proving entitlement to

priority payment as an administrative expense . . . rests with

the party requesting it"); In re CIS Corp., 142 B.R. 640, 642

(S.D.N.Y. 1992) ( 503(b)(1)(A) claimant has burden of proving

that its services provided an "actual, necessary" benefit to the

debtor). As we have long recognized, "the traditional

presumption favoring ratable distribution among all holders of

unsecured claims counsels strict construction of the Bankruptcy

Code provisions governing requests for priority payment of

administrative expenses." Hemingway Trans., 954 F.2d at 4-5

(citing cases). In order to qualify for "administrative expense"

priority under Bankruptcy Code 503(b)(1)(A), therefore, "the

consideration supporting the claimant's right to payment [must

Cir.), cert. denied, 439 U.S. 929 (1978); In re Booth, 19 B.R. 53

(Bankr. D. Utah 1982). See generally David G. Epstein, et al., 1

Bankruptcy 5-4(b) (1992) (surveying case law on both sides of

issue).

5

be] supplied to and beneficial to the debtor-in-possession in the

operation of the business." In re Mammoth Mart, Inc., 536 F.2d

950, 954 (1976) (construing Bankruptcy Act forerunner to Code

503(b)).

We can discern no economic "benefit" to the chapter 11

estate from its assumption of an "executory contract" to compen-

sate Capo for not performing the unsalaried corporate services

she previously performed for Electronica. To the extent Electro-

nica derived economic benefit from Capo's resignation i.e., in

the form of diminished risk of "disruption" to its business

operations law and logic suggest that the benefit derived pre-

petition, viz, at the time her resignation was submitted, not

during the postpetition stewardship of the debtor-in-possession.

Once Capo resigned, any presumed risk of internal "disruption"

ceased. The same result would follow if the Support Agreement

somehow were considered analogous to a severance agreement. Id.

at 955 (whether debtor's severance pay claim based on unrejected

contract is entitled to administrative priority depends on extent

to which "consideration supporting the claim was supplied during

the reorganization.") (emphasis added).

As the district court correctly reversed the allowance

of appellant's request for "administrative expense" priority

under Bankruptcy Code 503(b)(1)(A), we affirm.4

Affirmed.

4Our disallowance of Capo's 503(a),(b)(1)(A) request is
not intended to foreclose its reconsideration as a timely infor-

mal proof of unsecured claim.

6

7