**In re Emile E. MORAD, Debtor.**

**Stella Xifaras, Appellant,**

v.

**Emile E. Morad, Appellee.**

**BAP No. MW 04–053.**

**Bankruptcy No. 02–15186–JBR.**

United States Bankruptcy Appellate Panel for the First Circuit.

Aug. 2, 2005.

Philip N. Beauregard, Michael Franco, New Bedford, MA, John Rodman, on brief for Appellant.

Herbert Weinberg, North Andover, MA, on brief for Appellee.

Before LAMOUTTE, CARLO and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

Stella Xifaras ("Xifaras"), holder of a pre-bankruptcy claim in the chapter 7 case of Emile E. Morad ("Morad"), appeals the bankruptcy court's denial of her administrative expense request for attorneys' fees and costs incurred by her before bankruptcy, during the brief period of chapter 11, and following the conversion to chapter 7. For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

Our factual background is derived from Xifaras' unopposed brief and record on appeal. In 1994 Xifaras commenced a civil action against Morad in Massachusetts state court for breach of contract, breach of fiduciary duty, and violation of Mass. Gen. Laws ch. 93A (unfair trade practices) relating to certain units in a condominium development.[1] The case was tried in early 1996 and Xifaras was awarded a judgment

---

1. It appears that a Barbara Xifaras joined Stella as a plaintiff in that action and that Louis Andrade was a defendant along with Morad. These parties appear to have no role in the matter before us.

against Morad for money damages including multiple damages and attorneys' fees.

In May of 1996, Morad transferred three valuable Massachusetts property interests to family members, including, a house located on Drift Road in Westport, a one-half interest in commercial property located on County Street in New Bedford, and a one-half interest in a mortgage on a house on Freedom Boulevard in New Bedford. All three transfers were made without consideration. Xifaras commenced a fraudulent conveyance action against Morad in Massachusetts state court in 1997 claiming that all three property interests had been transferred with an intent to hinder, delay and defraud Xifaras with respect to her 1996 award. Judgment was entered against Morad after trial and all three conveyances were set aside.

The 1996 judgment was sustained on appeal and on November 6, 2001 an execution was issued in the amount of $554,048.20. Xifaras' efforts to collect on the judgment were stayed upon the filing of the bankruptcy petition two and one-half months later. That judgment is the basis of her bankruptcy claim.

The bankruptcy case was commenced by Morad as a chapter 11 in the Southern District of Florida on January 23, 2002. Three months later, on April 22, 2002, the case was converted to chapter 7 on Xifaras' motion. By order of the Florida court dated June 19, 2002, Xifaras' motion for change of venue was granted and the case was transferred to the District of Massachusetts.[2] Following the transfer, the Massachusetts bankruptcy court sustained Xifaras' objection to Morad's claim of exemptions under Florida law.[3]

As a direct consequence of Xifaras' successful fraudulent conveyance action, the three property interests which had been conveyed to family members became property of the bankruptcy estate. The interest in the County Street property was sold to Morad's son for $185,000 and the Drift Road property was sold to Morad's wife for $683,000. It appears that the estate's one-half interest in the mortgage on the Freedom Boulevard property is still property of the estate. Xifaras asserts that the current value of the estate's one-half interest would be one-half of $117,000, plus interest from 1994.

On September 22, 2004, Xifaras filed a motion requesting allowance of attorneys' fees and costs expended in the prosecution of the fraudulent conveyances action and in Morad's bankruptcy case under 11 U.S.C. § 503(b)(3).[4] On November 3, 2004, the bankruptcy court issued a Memorandum and Order denying her request. Xifaras filed a timely appeal of that order.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646

---

2. The conversion and transfer were entered on the Massachusetts docket on July 17, 2002.

3. The Panel affirmed the bankruptcy court's decision in an opinion and judgment issued on April 6, 2005.

4. Unless otherwise noted, all statutory references are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

(citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The bankruptcy court's denial of Xifaras' § 503(b) application is a final order. *See Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1339 (11th Cir.2000); *Marcus Montgomery Wolfson & Burten, P.C. v. AM Int'l, Inc. (In re AM Int'l, Inc.)*, 203 B.R. 898, 900 (D.Del.1996).

## STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). Most courts review a court's refusal to award attorneys' fees under 11 U.S.C. § 503(b) for abuse of discretion. *See, e.g.,*

*Celotex*, 227 F.3d at 1338; *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252 (5th Cir.1986) (fee awards are subject to abuse of discretion standard of review); *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)*, 210 B.R. 19, 23 (2d Cir. BAP 1997) (same). A bankruptcy judge abuses his discretion if he fails to apply the correct legal standard or his factual findings are clearly erroneous. *Celotex*, 227 F.3d at 1338.

## DISCUSSION

Xifaras' request for the payment of attorneys' fees and costs as an administrative expense is based upon § 503(b)(3)(B), which relates to the recovery of property by a creditor for the benefit of the estate, and upon § 503(b)(3)(D), which relates to a substantial contribution by a creditor in a chapter 11 case. Xifaras also seeks recovery on grounds that Morad's bankruptcy was filed in bad faith. The only basis given by the bankruptcy judge in his written denial of Xifaras' request appears to be her failure to meet the burden of a creditor for substantial contribution under § 503(b)(3)(D). Specifically, the bankruptcy judge decided that even though Xifaras' efforts were beneficial to the estate, there was no showing of "substantial contribution" during the short-lived chapter 11 phase of the case.[5] The bankruptcy judge

---

**5.** The November 3, 2004 Memorandum and Order states:

> The Court recognizes that the bankruptcy estate benefitted from the efforts made by creditor and party in interest Stella Xifaras' prepetition and post-conversion, yet concludes that the plain meaning of 11 U.S.C. § 503(b)(3), supported by case law (other than the Third Circuit) bars recovery of attorneys' fees and costs incurred during the prepetition or Chapter 7 post-conversion periods. The Court further finds that Xifaras has not met her burden of establishing a "substantial contribution" during the

> period between the filing of the Chapter 11 petition and the conversion to Chapter 7, as the contributions made during this period neither enhanced the progress of the reorganization nor contributed to the resolution of the Chapter 11 case.* The request for certain attorneys' fees and costs is hereby DENIED.
>
> The Court further finds and orders that the Massachusetts statutory interest rate of 12% is to be applied to post-judgment interest on the state court judgment of Stella and Barbara Xifaras against the Debtor.

was correct in denying the request for fees and costs under § 503(b)(3)(D). His failure to mention the other grounds of Xifaras' request was harmless error because she is not entitled to recover attorneys' fees and costs as administrative expenses under any of her theories.

■ Administrative expenses allowable under § 503(b), including legal fees and costs, are entitled to the first priority in payment under § 507(a)(1). *See* 11 U.S.C. § 507(a)(1). For this reason the provisions governing requests for administrative expense awards are to be construed narrowly in order to honor " 'the traditional presumption favoring ratable distribution among all holders of unsecured claims.' " *See Brandt v. Lazard Freres & Co., LLC (In re Healthco Int'l, Inc.)*, 310 F.3d 9, 12 (1st Cir.2002) (quoting *Hemingway Trans.*, 954 F.2d at 4–5); *La Electronica, Inc. v. Capo–Roman (In re La Electronica, Inc.)*, 995 F.2d 320, 322 (1st Cir. 1993) (same). The burden of proving entitlement to an administrative expense rests with the party requesting it. *See Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 5 (1st Cir.1992). Xifaras has failed to meet this burden.

Section § 503(b) governs the allowance of compensation for legal services and the reimbursement of costs as administrative expenses.[6] Expenses for legal fees and costs awarded under § 330(a) for services rendered to a trustee by a professional employed under § 327(a) are allowable as administrative expenses under § 503(b)(2). Legal fees and costs incurred by a creditor are allowable as administrative expenses under § 503(b)(4) if the requesting entity is able to demonstrate a qualifying occurrence under § 503(b)(3), like the recovery of property under subparagraph (B) or the making of a substantial contribution in a chapter 11 case under subparagraph (D). As a stand-alone provision, § 503(b)(3) has no bearing upon a request for legal fees and costs. It treats the allowance of a creditor's "actual, necessary expenses, *other than compensation and reimbursement [of the fees and costs of an attorney or an accountant] specified in paragraph (4) of this subsection. . . .*" 11 U.S.C. § 503(b)(3) (emphasis provided).

Section 503(b)(4) allows an administrative expense award for:

> reasonable compensation for professional services rendered by an attorney or an accountant of *an entity whose ex-*

---

\* These are only allowed under § 503(b)(4) once the threshold of § 503(b)(3)(D) has been met.

**6.** Section 503(b) provides, in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> . . .
> (2) compensation and reimbursement awarded under section 330(a) of this title;
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> . . .
> (B) a creditor that recovers, after the court's approval, for the benefit of the es-

tate any property transferred or concealed by the debtor;
> . . .
> (D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title;
> . . .
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . .

*pense is allowable under paragraph (3) of this subsection,* based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . .

11 U.S.C. § 503(b)(4) (emphasis provided). Thus, for there to be an award of legal fees and costs under § 504(b)(4), there must be a qualifying occurrence under § 503(b)(3) and a demonstration of reasonable compensation "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services. . . ." [7] The bankruptcy judge noted both of these requirements in the footnote to his memorandum and order. *See* note 5 above.

Xifaras made no request under § 503(b)(4) and the record indicates no showing upon which legal fees and costs may be awarded to her under that provision. At oral argument Xifaras' attorney said that it was her intention to pursue the allowance of a specific amount of compensation and reimbursement under § 503(b)(4) in a follow-up proceeding after a determination of his client's right to recover administrative expenses under § 503(b)(3). The record does not support this contention, but we need not belabor the point because Xifaras has failed to demonstrate a qualifying occurrence under § 503(b)(3)(B) or (D).

## A.  Section 503(b)(3)(B).

Xifaras' request for the allowance of legal fees and costs as an administrative expense under § 503(b)(3)(B) stems from her successful recovery of property in the pre-bankruptcy fraudulent conveyances action. That provision provides for the allowance of an administrative expense by "a creditor that recovers, *after the court's approval,* for the benefit of the estate any property transferred or concealed by the debtor . . ." 11 U.S.C. § 503(b)(3)(B) (emphasis provided). The estate clearly benefitted from the judgment she pursued in that action; however, it is equally clear that Xifaras did not obtain bankruptcy court approval before the commencement of that action. She argues that the "after the court's approval" requirement in § 503(b)(3)(B) is not universally applicable and that it should not be a bar to her recovery of an administrative expense in this instance.

There is no First Circuit authority directly on point. Those courts that have examined the meaning of "after the court's approval" in § 503(b)(3)(B) are divided on the extent of its applicability. Some courts acknowledge prior approval to be the rule, but allow retroactive court approval under certain circumstances when a creditor's recovery of an asset is for the benefit of the estate. *See, e.g., In re Zedda,* 169 B.R. 605, 607–608 (Bankr.E.D.La. 1994); *In re Antar,* 122 B.R. 788, 791 (Bankr.S.D.Fla.1990); *In re Johnson,* 72

---

**7.** Section 503(b)(4) performs essentially the same function with respect to a creditor's request for legal fees and costs as does § 330(a) with respect to a trustee's request for an allowance of professional fees as an administrative expense under § 503(b)(2). Section 330(a)(3) requires that the bankruptcy court consider the nature, extent, and value of such services, taking into account all relevant factors, including, time spent, rates charged, whether the services were professional or beneficial to the estate, whether the time expended was commensurate with the complexity, importance and nature of the problem, and whether the compensation is reasonable based upon a comparison with similar services rendered in a non-bankruptcy case. *See* 11 U.S.C. § 330(a). Without the required showing, professional fees and costs will not be awarded under § 330(a) or allowed as an administrative expense under § 503(b)(2).

B.R. 115, 118 (Bankr.E.D.N.C.1987); *In re Rumpza,* 54 B.R. 107 (Bankr.D.S.D.1985). Other courts reject *post facto* approval. *See, e.g., In re Blount,* 276 B.R. 753, 758 (Bankr.M.D.La.2002); *In re Lagasse,* 228 B.R. 223, 225 (Bankr.E.D.Ark.1998); *In re Fall,* 93 B.R. 1003, 1012 (Bankr.D.Or. 1988); *Lazar v. Casale (In re Casale),* 27 B.R. 69, 70 (Bankr.E.D.N.Y.1983).[8]

We agree with those courts that require prior court approval, yet allow *post facto* approval under extraordinary circumstances because that is the rule in this circuit with respect to the employment of professionals by a trustee under § 327(a). A trustee may obtain *post facto* approval,

> but only if it can be demonstrated (1) that the employment satisfies the statutory requirements, and (2) that the delay in seeking court approval resulted from extraordinary circumstances. Relatedly, we hold that tardiness occasioned merely by oversight cannot qualify as an extraordinary circumstance under the second prong of the aforesaid test.

*In re Jarvis,* 53 F.3d 416, 418 (1st Cir. 1995). Prior approval is preferable

> because it permits the bankruptcy court to supervise the administration of the estate more closely, and minimizes the chance that the court will be confronted with a *fait accompli.* To achieve these desirable ends, the prior approval requirement must have teeth. A relatively strict standard, such as extraordinary circumstances, serves this purpose. At the same time, it encourages compliance

with the statute and eliminates opportunities for manipulation.

*Id.* at 421.

The *Jarvis* rule should apply to the approval of property recovery required under § 503(b)(3)(B) for several reasons. First, the statutory language employed in § 503(b)(3)(B) ("after the court's approval") is stronger with respect to timing than the language used in § 327(a) ("with the court's approval"). If "with" implies prior approval, surely "after" leaves little doubt. Second, § 503(b) is the end point along the statutory path leading to an administrative expense award for professional fees. Along the way, court approval of the employment of a professional by a trustee under § 327(a) is a qualifying event under § 330(a), in much the same way that prior court approval of the recovery of property by a creditor under § 503(b)(3)(B) is a qualifying event under § 503(b)(4). If prior court approval of a trustee's professionals is preferable, then, surely, at the very least, a creditor who is not a fiduciary should be held to the same restrictive standard. A lesser standard would invite creditors to seek compensation and reimbursement for services that should have been performed by a trustee or another duly authorized estate officer. The requirement of prior court approval for property recovery under § 503(b)(3)(B) will leave the pursuit of estate assets with the trustee, where it belongs, unless otherwise authorized by the court for cause. Third, the very essence of an administrative expense under § 503(b)(1)(A) is that it arises during the administration of an estate. *See*

---

**8.** Besides addressing the plain meaning of the statute, both *Fall* and *Casale* noted that § 64(a) of the Bankruptcy Act, which preceded § 503(b)(3)(B) of the Code, did not specifically require prior court approval for a creditor to recover property for the estate and obtain an administrative expense. Thus, relying on the "general rule of statutory construc-

tion ... that a change in the language of a statute indicates that a departure from the old law was intended," these courts concluded that Congress meant to require prior court approval for this type of administrative expense. *See Casale,* 27 B.R. at 70; *Fall,* 93 B.R. at 1012.

**272**

*La Electronica,* 995 F.2d at 322 (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir.1976)); *Lastra v. Estevez (In re Bay Broadcasting, Inc.),* 182 B.R. 369, 374 (D.P.R.1995). To allow otherwise would elevate ordinary pre-filing claims for goods and services to administrative expense status. Services rendered prior to the existence of an estate, like the recovery by Xifaras in this instance, are not administrative services.

■ Xifaras has made no showing of extraordinary circumstances; indeed, no such showing is possible in this case. The fraudulent conveyances action was commenced in 1997. It was a *fait accompli* by the time the bankruptcy case was commenced in 2002. At that point bankruptcy court oversight was impossible. The services for which compensation and reimbursement are sought are, if anything, part of Xifaras' pre-bankruptcy claim. The value received by the estate from those services cannot change that fact. For these reasons there is no error in the bankruptcy court's failure to grant *post facto* approval under § 503(b)(3)(B).

**B. Section 503(b)(3)(D).**

■ The actual, necessary expenses incurred by "a creditor ... in making a substantial contribution in a case under chapter ... 11 ..." may be allowed as an administrative expense. *See* 11 U.S.C. § 503(b)(3)(D). To meet the burden of establishing this qualifying event for an award of legal fees and costs under § 503(b)(4), Xifaras must show that she made a substantial contribution in Morad's chapter 11 case. Section 503(b)(3)(D) balances the dual objectives of encouraging " 'meaningful creditor participation in the reorganization process,' ... and 'keeping fees and administrative expenses at a mini-

mum so as to preserve as much of the estate as possible for the creditors.' " *Lebron v. Mechem Fin. Inc.,* 27 F.3d 937, 944 (3d Cir.1994) (citation omitted); *see also Oxford Homes, Inc.,* 204 B.R. 264, 268 n. 16 (Bankr.D.Me.1997) ("Although the section is designed to encourage meaningful creditor participation by permitting fee awards, its substantial contribution requirements foster tight judicial oversight to maximize distributions to creditors").

■ The record amply supports the conclusion of the bankruptcy court that the estate received benefit from Xifaras' many efforts. Before bankruptcy she obtained a judgment setting aside fraudulent conveyances. After a chapter 11 was commenced in Florida she was successful in converting the case to chapter 7 and changing venue to Massachusetts. Moreover, it is of no consequence that Xifaras may have accomplished these things to advance her own cause in collecting a large judgment. *See Celotex,* 227 F.3d at 1339 ("To impose an altruism requirement on the ability to obtain administrative expenses under § 503(b)(3)-(4) would effectively render the section meaningless as to creditors"); *In re Pow Wow River Campground, Inc.,* 296 B.R. 81, 85 (Bankr.D.N.H.2003) (citing *Oxford Homes,* 204 B.R. at 268 n. 16). Unfortunately for Xifaras, however, the record does not support that she made a substantial contribution during the short time the case was in chapter 11.

The case was commenced in Florida as a chapter 11 on January 23, 2002. It was converted to chapter 7 three months later on Xifaras' motion. There is nothing in the record before us to support Xifaras' contentions that, in addition to challenging venue, she filed numerous motions challenging the debtors schedules, his exemptions, and his "bad faith" filing of the

bankruptcy petition.[9] Thus, we have no basis upon which to review for clear error the bankruptcy judge's finding that, "Xifaras has not met her burden of establishing a 'substantial contribution' during the period between the filing of the Chapter 11 petition and the conversion to Chapter 7, as the contributions made during this period neither enhanced the progress of the reorganization nor contributed to the resolution of the Chapter 11 case."

■ Her activities before the bankruptcy case was commenced, namely, the successful fraudulent conveyance action, and after it was converted to chapter 7, primarily, the change in venue to Massachusetts, do not qualify under § 503(b)(3)(D). *See Lebron,* 27 F.3d at 945. As the *Lebron* court stated, "[t]here are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and post-conversion expenses were intended to be reimbursable under those provisions or not at all." *Id.* (citing § 503(b)(3)(B) and (C)). For the reasons discussed above, Xifaras has failed to establish § 503(b)(3)(B) as a basis for compensation and reimbursement and she has made no request under § 503(b)(3)(C). Therefore, the findings and conclusions of the bankruptcy judge are correct.

### C. Bad Faith Filing.

■ Xifaras' request for fees and costs in the bankruptcy court was also based upon her assertion that Morad had filed his bankruptcy petition in bad faith. It is her primary contention that Morad filed his bankruptcy case to frustrate her legitimate efforts to enforce her state court judgment. Sanctions in the form of attorneys' fees and costs for the bad faith filing of a bankruptcy petition have been awarded to a creditor in similar circumstances. *See, e.g., In re Nursery Land Dev., Inc.,* 91 F.3d 1414 (10th Cir.1996). However, in *Nursery,* the Tenth Circuit affirmed the award of sanctions on a record supporting the finding of bad faith. *Id.* at 1416. Here, the order is silent on bad faith (*see* note 5 above) and we are without a record to examine for abuse of discretion. Xifaras has not provided us with a transcript or other evidence to support her assertions of bad faith. Without a record, we have no basis upon which to determine error by the bankruptcy court. *See In re Abijoe Realty Corp.,* 943 F.2d 121, 123 n. 1 (1st Cir.1991) ("The responsibility for voids in the appellate record must reside with the party whose claim of error depends for its support upon any portion of the record of the proceedings below which was omitted from the designation of the record on appeal."). Consequently, Xifaras' appeal on this point must be denied.

### *CONCLUSION*

For the reasons set forth above, we **AFFIRM** the bankruptcy court's November 3, 2004, Memorandum and Order de-

---

9. Nor have we been informed how these activities would have been a "substantial contribution" in the chapter 11 case (i.e., reorganization). What we do know is that Xifaras worked to have the case converted to chapter 7. We are inclined to agree with those cases that require the creditor to show substantial contribution in the reorganization proceeding. *See, e.g., Cellular 101, Inc. v. Channel* Communications, Inc. (In re Cellular 101, Inc.), 377 F.3d 1092, 1097 (9th Cir.2004) ("services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress o[f] reorganization"); *Lebron,* 27 F.3d at 944; *In re Consolidated Bancshares,* 785 F.2d at 1253; *Oxford Homes,* 204 B.R. at 268.

nying Xifaras' request for allowance of attorneys' fees and costs.