**In re STOICO RESTAURANT GROUP, INC., Debtor.**

**In re Sub & Stuff, Inc., Debtor.**

**In re Spaghetti Jack's, Inc., Debtor.**

Nos. 98–20602–11, 98–20603–11, 98–20601–11.

United States Bankruptcy Court, D. Kansas.

Jan. 11, 2002.

656

Richard M. Beheler, Blackwell Sanders Peper Martin, Kansas City, Missouri, for Blackwell Sanders Peper Martin, LLP.

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, Kansas, as Estate Representative for Stoico Restaurant Group, Inc.

Janice E. Stanton, Stanton & Redling-shafer, L.L.C., Kansas City, Missouri, for W. Terrence Brown, Estate Representative for Sub & Stuff, Inc., and Spaghetti Jack's, Inc.

Paul M. Hoffman, Morrison & Hecker, L.L.P., Kansas City, Missouri, for the Unsecured Creditors Committees.

Thomas M. Franklin, Wehrman & Part-ners, P.C., Kansas City, Missouri, for Sysco Food Services of Kansas City, Inc.

William F. Schantz, for United States Trustee.

### MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The law firm of Blackwell Sanders Peper Martin LLP took a $15,000 retainer fee and filed Chapter 11 petitions for Stoico Restaurant Group, Inc., and its two subsidiaries, Spaghetti Jack's, Inc., and Sub & Stuff, Inc., on March 6, 1998. Each of the debtors-in-possession then applied under 11 U.S.C. § 327(a) to have the law firm

employed as counsel to conduct its case.[1] But Blackwell Sanders failed to show the disinterestedness and freedom from adverse interest that § 327(a) requires, so the court denied it employment in each case. Blackwell Sanders did not appeal the denials. But now it seeks payment for professional work it performed for each of the debtors before the court denied it employment.

Can Blackwell Sanders keep the $15,000 retainer and be further compensated for the professional work it performed (and the expenses it incurred)? The court holds that it cannot under the controlling authority of the Tenth Circuit decision in *In re Donald H. Albrecht*.[2]

## I

### Interested Parties

Richard M. Beheler appears in this proceeding for Blackwell Sanders Peper Martin, LLP, Kansas City, Missouri. He is the attorney who signed and filed the petitions on behalf of Stoico Restaurant Group, Inc.; Sub & Stuff, Inc.; and Spaghetti Jack's, Inc.

After the court denied Blackwell Sanders employment, it approved the employment of Robert E. Nugent III, formerly of the firm of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kansas, as counsel to conduct the cases for the debtors-in-possession. But Robert E. Nugent III no longer appears for the debtors because he has since become a United States Bankruptcy Judge for the District of Kansas.

Estate Representatives appear as successors to the bankruptcy estates' claims or interests. The three estates have been jointly administered but were never substantively consolidated, and coordinated liquidation plans were filed in each case. The court confirmed the plans on May 19, 1999. Each plan transferred estate causes of action to Estate Representatives who were charged with the prosecution of post-confirmation recovery actions and the distribution of any recoveries.

Cynthia F. Grimes of Grimes & Rebein, L.C., Lenexa, Kansas, appears as Estate Representative for Stoico Restaurant Group, Inc.

Janice E. Stanton of Stanton & Redlingshafer, L.L.C., Kansas City, Missouri, appears as counsel for W. Terrence Brown, Estate Representative for both Sub & Stuff, Inc., and Spaghetti Jack's, Inc.

Paul M. Hoffman of Morrison & Hecker, L.L.P., Kansas City, Missouri, appears for the Unsecured Creditors Committee in each case.

Thomas M. Franklin of Wehrman & Partners, P.C., Kansas City, Missouri, appears for Sysco Food Services of Kansas City, Inc., a major creditor of the debtors.

The United States Trustee appears by William F. Schantz.

The court finds that this proceeding is core under 28 U.S.C. § 157 and that it has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

## II

### Blackwell Sanders' Applications for Employment

After three months of delay caused by objections to the applications and their

---

1. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 34 filed March 20, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 34 filed March 20, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 34 filed March 20, 1998.

2. *In re Donald H. Albrecht*, 233 F.3d 1258 (10th Cir.2000).

amendments, the court denied the applications on June 9, 1998. The decision was announced on the record in open court. A transcript of the proceeding was filed on June 17, 1998, and an order memorializing the ruling was entered on November 19, 1998. Blackwell Sanders did not appeal the ruling. The reasons for the court's denial of the employment are reflected in the following procedural summary.

As he did with the petitions, Richard M. Beheler signed the applications for employment of Blackwell Sanders. In each application, Mr. Beheler represented that Blackwell Sanders was a "disinterested person" as defined in 11 U.S.C. § 101(14) and that Blackwell Sanders did not hold or represent an interest adverse to the debtors. But, in the next sentence of the application, Mr. Beheler qualified this representation by stating: "To the extent that there is any pre-existing debt owed by Debtors to Blackwell Sanders, the firm of Blackwell Sanders has waived its right to any payment for pre-petition services not connected to this bankruptcy proceeding in order to avoid having an interest in this proceeding." [3]

Although the court's rules require affidavits of disinterestedness and lack of adverse interest from all attorneys who will represent a debtor-in-possession in conducting a case, the only affidavits attached to the Blackwell Sanders applications were those of Richard M. Beheler. His affidavit was attached as Exhibit A to each application.

At numbered paragraph 5 in each of his affidavits, Mr. Beheler also stated: "Neither Blackwell Sanders nor its partners or associates have any pre-petition claim against Debtors or the estates." Then, in the next sentence of his affidavit he again qualified this representation by stating: "Any such claims which previously existed have been waived as a condition of Blackwell Sanders' representation of Debtors in the present action." [4]

Finally, Mr. Beheler's affidavit acknowledged that Blackwell Sanders had represented the debtors *in the past* and disclosed that one of the firm partners, James Ash, had *"previously* served as a Director of Debtor–in–Possession Stoico Restaurant Group Inc., until his resignation from such position on December 7, 1997." [5]

**The United States Trustee's Objection to the Application to Employ**

The United States Trustee objected to Blackwell Sanders' employment,[6] pointing to the definition in § 101(14)(D): " 'disinterested person' means person that ... (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debt-

---

3. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 34 filed March 20, 1998, ¶ 7 at 3; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 34 filed March 20, 1998, ¶ 7 at 3; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 34 filed March 20, 1998, ¶ 7 at 3.

4. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Exhibit A to Doc. # 34 filed March 20, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Exhibit A to Doc. # 34 filed March 20, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Exhibit A to Doc. # 34 filed March 20, 1998.

5. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Exhibit A to Doc. # 34 filed March 20, 1998, ¶ 6; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Exhibit A to Doc. # 34 filed March 20, 1998, ¶ 6; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Exhibit A to Doc. # 34 filed March 20, 1998, ¶ 6.

6. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 53 filed April 6, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 52 filed April 6, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 54 filed April 6, 1998.

or ...." Since the cases were filed on March 6, 1998, within two years of James Ash's resignation as a director on December 7, 1997, the United States Trustee posited that Blackwell Sanders was not disinterested and therefore unqualified to serve as counsel for the debtors-in-possession.

## Blackwell Sanders' First Amendment to the Application to Employ

Responding to the United States Trustee's objections, Richard Beheler amended the Blackwell Sanders' applications by expanding on his affidavits.[7] In doing so, he disclosed that not only had Blackwell Sanders, through James Ash, served as a director of Stoico Restaurant Group, Inc., in the past, but that James Ash was presently representing Stoico Restaurant Group, Inc., its president, and its former president in defense of a state court securities fraud suit. A copy of the state court petition was attached to the amended applications.

## Sysco Food Services's Objection to the Blackwell Sanders' Application to Employ

Following these amendments, Sysco Food Services of Kansas City, Inc., also objected to Blackwell Sanders' employment, stating numerous grounds.[8]

## Blackwell Sanders' Second Amendment to the Application to Employ

Then, on May 20, 1998, Richard M. Beheler signed and filed Second Amended Applications for Employment on behalf of Blackwell Sanders in each case.[9] The amendments consisted of yet another change to his affidavits. In his amended affidavits, Mr. Beheler revealed three previously undisclosed items of information:

First, he revealed that Blackwell Sanders' pre-petition claim against the debtors, the claim purportedly waived in the applications and affidavits, was for the amount of $81,722.63. (After the court denied the employment, Blackwell Sanders filed an unsecured proof of claim for $81,751.63.)

Second, he revealed that James Ash had been Secretary of Stoico Restaurant Group, Inc., from June 1995 to February 1996 and thereafter became Assistant Secretary until May 1997.

Third and most importantly, Mr. Beheler revealed for the first time that James Ash currently held, in a retirement trust, 13,039 shares of Stoico Restaurant Group, Inc., common stock plus exercisable stock options to acquire 4,075 additional shares of that common stock.

## III

## Blackwell Sanders' Application for Compensation

Blackwell Sanders' applications for professional compensation were also signed by Richard M. Beheler.[10] The United States

**7.** *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Exhibit A to Doc. # 62 filed April 15, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Exhibit A to Doc. # 61 filed April 15, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Exhibit A to Doc. # 64 filed April 15, 1998.

**8.** *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 66 filed April 21, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 65 filed April 21, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 67 filed April 21, 1998.

**9.** *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 83 filed May 20, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 82 filed May 20, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 84 filed May 20, 1998.

**10.** *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 116 filed July 17, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 119 filed July 17, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 113 filed July 17, 1998.

Trustee, the Official Unsecured Creditors Committee, and the Estate Representatives opposed the applications for compensation.

The applications seek $29,732.00 of professional compensation and $4,145.30 in out-of-pocket expenses, a total request of $33,877.30.

According to the Rule 2016 disclosure statements filed in each case, Blackwell Sanders obtained a $15,000 retainer from the debtor (without disclosing which debtor) before it filed the petitions. The disclosure statements, filed in each case, indicate the retainer was to cover representation in all the cases.[11]

The applications for compensation further indicate that "None of the retainer has been applied to services performed or fees incurred by or on behalf of Debtors' [sic] pre or post-petition."[12] This statement indicates that the $15,000 retainer is being held in Blackwell Sanders' trust account and that the debtor's retain an interest in the funds sufficient to make them property of the estate to which the Estate Representatives succeeded.[13]

### Section 503(b)(3)(D) Does Not Apply

■ Blackwell Sanders' principal contention is that 11 U.S.C. § 503(b)(3)(D) entitles it to allowance of its professional fees and expenses because (1) it is a creditor and (2) it made a substantial contribution to the cases. Perhaps Blackwell Sanders has made a substantial contribution to the cases but, of course, whether

this is true is a factual question that would require evidence for resolution.

And, in fact, Blackwell Sanders is a "creditor" as that term is defined in § 101(10) since it does hold an $81,751.63 pre-petition claim. Nevertheless, the question is not the firm's status under § 503(b)(3)(D), but rather whether that Code section applies at all.

Section 503(b) contains six numbered paragraphs. The first three are relevant to whether § 503(b)(3)(D) can be applied in Blackwell Sanders' favor. The portions of § 503(b) necessary for the solution to this question are as follows:

### § 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense . . .

(b) After notice and a hearing, there shall be allowed, administrative expenses, . . . including—

(1) (A) the actual, necessary costs and expenses of preserving the estate, . . . *rendered after the commencement of the case;*

. . .

(2) compensation and reimbursement awarded under section *330(a)* of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . .

---

11. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 2 filed March 6, 1998; *In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 2 filed March 6, 1998; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 2 filed March 6, 1998.

12. *In re Spaghetti Jack's, Inc.*, Case No. 98–20601, Doc. # 116 filed July 17, 1998, at 2–3;

*In re Stoico Restaurant Group, Inc.*, Case No. 98–20602, Doc. # 119 filed July 17, 1998, at 2–3; *In re Sub & Stuff, Inc.*, Case No. 98–20603, Doc. # 113 filed July 17, 1998, at 2–3.

13. *In re Hodes*, 239 B.R. 239 (Bankr.D.Kan. 1999).

(D) *a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title . . . .*

(Emphasis added.)

The Tenth Circuit Court of Appeals recently rejected a claim for professional fees based upon the first paragraph of § 503(b) in *In re Donald H. Albrecht.*[14] Mr. Albrecht had originally filed a Chapter 11 petition in California. The case was transferred to Wyoming where the bankruptcy judge ordered appointment of a trustee. The trustee immediately engaged a California firm to act as his special litigation counsel in Wyoming, believing that circumstances justified immediate action there by the special counsel. The firm began work immediately, even before the trustee was officially appointed. When the trustee applied to have the firm employed as special counsel, the bankruptcy judge denied the employment, reasoning that experienced Wyoming counsel could be found to handle the local work. The California firm did not appeal the bankruptcy judge's order denying it employment.

When the California law firm then applied for post-petition fees and expenses, it claimed compensation under § 503(b)(1)(A). But the bankruptcy judge denied the fees under this provision.

The firm appealed the ruling to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed the bankruptcy judge's denial of the professional compensation. The firm then appealed to the Tenth Circuit Court of Appeals. The appellate court affirmed the BAP, adopting the BAP decision as its own, with additional comments.

Addressing the applicability of § 503(b)(1)(A), the BAP stated the issue to be: "whether a law firm denied appointment as a professional under § 327(a) may recover compensation under § 503(b)(1)(A) for services it rendered prior to and during the time that its application for employment was pending and after the application was disallowed."[15]

Finding no controlling law in the Tenth Circuit, the BAP adopted the majority rule among the courts addressing the issue, which hold that this section "cannot serve as a basis for awarding fees to professionals where employment was denied under § 327(a)."[16] To explain the majority rule, the BAP quoted the rationale expressed in *F/S Airlease.* That court had reasoned that payment of professional fees is controlled not by § 503(b)(1)(A), but by § 503(b)(2) in conjunction with §§ 330(a) and 327(a). Therefore, a professional who is not employed cannot be compensated under § 503(b)(1)(A) without negating § 327(a):

> The authority to pay administrative expenses for professionals . . . is found not in section 503(b)(1)(A), but in section 503(b)(2)[,] which permits payment as an administrative expense for "compensation and reimbursement awarded under section 330(a)." Section 330(a), in turn, empowers the court to award "reasonable compensation" to . . . a "professional person employed under section 327." Because [ the attorney] is a professional who was hired to "assist the [debtor-in-possession] in carrying out the [debtor-in-possession's] duties," see 11 U.S.C. § 327(a), and he failed to comply with that section's requirement to obtain prior approval of his appointment, he cannot rely on section 503(b)(1)(A) as a way

---

14. *In re Donald H. Albrecht,* 233 F.3d 1258 (10th Cir.2000).

15. *In re Albrecht,* 245 B.R. 666, 670 (10th Cir. BAP 2000).

16. *Id.*

of circumventing section 327(a). If [the attorney] were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval.[17]

This same rationale is applicable, in this court's view, to a claim for professional fees under § 503(b)(3)(D).

Actually, the law firm in *Albrecht* had also argued unsuccessfully before the bankruptcy judge that § 502(b)(3) and (4) entitled it to the fees. According to the BAP opinion, however, the bankruptcy judge had ruled those provisions did not apply because the law firm was not a creditor or an attorney for a creditor under those sections.

Yet, neither the Tenth Circuit nor the BAP addressed § 503(b)(3) or (4) in their opinions. Whether they declined to do so because the argument had been abandoned or because they felt it unnecessary in light of the majority rule they adopted is unknown. But, in the opinion of this court, if § 503(b)(1)(A) cannot be used to pay professional fees and expenses, *a fortiori*, neither can § 503(b)(3)(D), for the same reasons expressed in the majority rule.

## Blackwell Sanders Failed to Disclose in Good Faith

Blackwell Sanders' final argument urges the court to exercise its discretionary power to award the fees. It cites two cases supporting the granting of professional fees to a law firm denied employment. In one case, the firm took a retainer, was employed with court approval, and performed service until it was later disqualified and removed from employment.[18] In the other case, the firm performed services while the court was deciding whether to grant or deny its application for employment, which it ultimately denied.[19] In each case, the court allowed the compensation because it found the law firm had acted in good faith in disclosing its connections to the debtor.

But that is hardly the case here. As outlined above, Blackwell Sanders failed to make timely and full disclosures. The connections ultimately revealed were known to the firm at the time of its first employment application, yet Mr. Beheler omitted disclosing significant connections until the objections of the United States Trustee and Sysco Food Services forced him to divulge the information. In contrast to the cases cited by Blackwell Sanders, I find that Mr. Beheler failed to act in good faith in disclosing the firm's connections with the debtors-in-possession.

## The Court Lacks Discretion to Award Fees

■ But this finding is unnecessary to the resolution of this matter. This court has no discretion to award the fees when, as is the case, a professional has not been employed. As held in *Albrecht*, professional fees are paid under § 330(a)(1). This section authorizes the court to award fees to a professional person *employed* under § 327. Section 327 allows a debtor-in-possession to obtain court-approved employment of attorneys who will conduct a Chapter 11 case. Since Blackwell Sanders and its attorneys were never employed under § 327 (or § 1103), the court has no discretion to allow them professional compensation, even if it were disposed to do so.

■ Finally, the court finds that the $15,000 pre-petition retainer is property of the bankruptcy estate. Blackwell Sanders

---

**17.** *Id.* (citing *F/S Airlease II, Inc. v. Simon (Appeal of F/S Airlease II, Inc.)*, 844 F.2d 99, 108 (3d Cir.1988), with fifth and six alterations in original).

**18.** *In re M–H Group, Inc.*, 139 B.R. 836 (Bankr.N.D.Ohio 1991).

**19.** *In re TMA Associates, Ltd.*, 129 B.R. 643 (Bankr.D.Colo.1991).

mentions in the applications for compensation that it had received the retainer, but it did not advance any reasons why it should be entitled to keep these funds. The court therefore finds that by its silence the firm has waived any claim that the pre-petition retainer is distinguishable from the other compensation denied it by this ruling.

## IV.

### Conclusion

The applications for compensation, including the retainer, are denied. Blackwell Sanders is ordered forthwith to pay the $15,000 retainer to the Estate Representatives of the debtor from whom the retainer was received.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed. R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58.

IT IS SO ORDERED.