**In re POW WOW RIVER
CAMPGROUND, INC.
et al., Debtors.**

Nos. 02–11219–JMD to 02–11221–JMD.

United States Bankruptcy Court,
D. New Hampshire.

April 25, 2003.

Eleanor Wm. Dahar, Victor W. Dahar, Victor W. Dahar, P.A., Manchester, NH, for Debtors.

Michael C. McCarthy, Hampton, NH, for First Hamilton Corporation.

Peter V. Doyle, Shaines & McEachern, P.A., Portsmouth, NH, for Camp Granada, LLC.

Geraldine B. Karonis, Assistant U.S. Trustee, Manchester, NH.

### MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

After confirmation of a liquidating plan of reorganization which resulted in the sale of substantially all of the jointly administered Debtors' assets to First Hamilton Corporation and the payment of a one hundred percent dividend plus interest to unsecured creditors, the Court held a hearing to consider fee applications from professionals. Counsel for the Debtors and the accountant for the Debtors sought fees under section 330 of the Bankruptcy Code.[1] Counsel for Camp Grenada, LLC, a creditor, sought fees under section 503(b) of the Bankruptcy Code on the basis that it had made a substantial contribution to these jointly administered bankruptcy cases.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

---

1. Unless otherwise indicated, all references to statutory sections (the "Bankruptcy Code" or "Code") are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq.

This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Debtors filed their Chapter 11 bankruptcy petitions on April 16, 2002. No official committee of unsecured creditors was established in this case, and there was very little activity by individual secured creditors. Competing reorganization plans were filed by the Debtors and the Debtors' secured creditor First and Ocean National Bank (the "Bank"). The Bank filed its plan first. On November 25, 2002, the Bank filed a Plan of Reorganization dated November 25, 2002 (Doc. No. 96) (the "Bank's Plan") and a disclosure statement (Doc. No. 92) (the "Bank's Disclosure Statement"). The Bank's Plan proposed the payment in full of its secured real estate mortgage claim in the amount of $936,137.00 plus a thirty-five percent dividend for unsecured creditors. On December 17, 2002, the Debtors filed a Plan of Reorganization dated December 10, 2002 (Doc. No. 99) (the "Debtors' December 10 Plan") and a disclosure statement (Doc. No. 98) (the "Debtors' December 10 Disclosure Statement"). The Debtors' December 10 Plan proposed a fifty percent dividend for unsecured creditors, which would have represented a total payout of $35,805.63 to unsecured creditors.

On December 31, 2002, Camp Granada filed objections to the adequacy of both the Bank's Disclosure Statement and the Debtors' December 10 Disclosure Statement. In its objection to the Bank's Disclosure Statement, Camp Granada asserted that the Bank had failed to disclose that Camp Granada had approached the Bank to obtain financing with which to acquire the Debtors' assets and pay all claims in full. In its objection to the Debtors' December 10 Disclosure Statement, Camp Granada asserted that the Debtors failed to disclose the existence of a purchase and sale agreement between the Debtors and Camp Granada, and that the transaction would result in all creditors being paid in full.

The Court held a hearing on January 7, 2003 to consider the adequacy of the Bank's Disclosure Statement and the Debtors' December 10 Disclosure Statement. Camp Granada's counsel ("Attorney Doyle") attended the hearing and repeatedly raised objections on behalf of his client. Despite the Court's admonition that Camp Granada did not appear to have standing to object to either disclosure statement, Attorney Doyle persisted in his assertion that, among other things, his client wished to engage in a bidding process for the Debtors' assets which would result in the unsecured creditors being paid in full.[2] Also raised at the hearing was the United States Trustee's objection that both plans were unconfirmable because they allowed the Debtors' current equity holder to retain some assets while giving unsecured creditors less than a one hundred percent dividend. In response to discussion regarding Camp Granada's wish for a bidding procedure and the absolute priority rule, the Debtors' counsel ("Attorney Dahar") announced at the hearing that the Buyer now intended to pay a one hundred percent dividend to unsecured creditors. The Bank's Disclosure Statement received little discussion because the Bank had made clear that it would not pursue its Plan unless the Debtors failed to go forward with the Debtors' December 10 Plan.

---

**2.** Camp Grenada, LLC immediately cured its standing problem by acquiring the claim of Fraiser Pontiac by assignment dated January 9, 2003 and filed a Notice of Transfer of Claim pursuant to Fed. R. Bankr.P. 3001(e)(1) and (2) on January 17, 2003 (Doc. No. 133).

On January 14, 2003, the Debtors filed an Amended Plan of Reorganization dated January 12 (Doc. No. 120) (the "Amended Plan") and Disclosure Statement (Doc. No. 119) (the "Amended Disclosure Statement"). In accordance with the representation made by Attorney Dahar at the January 7 hearing in response to objections by Attorney Doyle and the United States Trustee, the Amended Plan increased the dividend to unsecured creditors to one hundred percent. Because the Amended Plan also provided for an additional unsecured claim, the total payout to unsecured creditors rose to $102,580.87.

At the January 21, 2003 hearing on the adequacy of the Amended Disclosure Statement, Attorney Doyle continued to assert that his client had "a better deal" to offer the Debtor, and that the unsecured creditors would be harmed by the Debtors' refusal to disclose his client's offer. Attorney Doyle asserted that although the Debtors' Amended Plan now provided for a one hundred percent dividend to unsecured creditors, the class remained impaired because the Amended Plan did not provide for payment of interest. Shortly thereafter, Attorney Dahar announced to the Court that the buyer would pay interest on the unsecured claims.

On January 22, 2003, the Debtors filed a Second Amended Reorganization Plan dated January 21, 2003 (Doc. No. 138) (the "Second Amended Plan") and Second Amended Disclosure Statement (Doc. No. 137) (the "Second Amended Disclosure Statement"). In accordance with Attorney Dahar's representation at the January 21 hearing, the Second Amended Plan provided for the sale of substantially all of the Debtors' assets to First Hamilton for $1,201,944.00. The proposed sale would result in payment to unsecured creditors in the amount of one hundred percent of their claim plus interest, with a total pay-

out of $104,438.87. The Court approved the Second Amended Disclosure Statement on January 22, 2003 (Doc. No. 139) and confirmed the Second Amended Plan on February 13, 2003 (Doc. No. 161).

## III. DISCUSSION

### A. Substantial Contribution Under § 503(b)

The term "substantial contribution" is not defined in the Bankruptcy Code. In addition, the meaning of the term when considering the contribution of a creditor to the resolution of a reorganization proceeding has been the subject of some disagreement in the reported cases.

Like other provisions governing administrative fees allowance, § 503(b)(3)(D) creates a tension within the Code's reorganization framework. Although the section is designed to encourage meaningful creditor participation by permitting fee awards, its substantial contribution requirements foster tight judicial oversight to maximize distributions to creditors. *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 37 (Bankr. D.N.J.1996); *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 250 (Bankr.D.Colo.1990); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr.S.D.N.Y. 1989), *aff'd*, No. 90 CIV. 3823, 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991). Administrative expenses are subject to the court's strict scrutiny. *Woburn Assoc. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 4–5 (1st Cir.1992); *In re S.N.A. Nut Co.*, 186 B.R. 98, 105 (Bankr.N.D.Ill.1995).

In order for a "creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102," 11 U.S.C. § 503(b)(3)(D), to show that it has made a "substantial contribution," it

must prove, by a preponderance of the evidence, *9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. at 249, that its actions " 'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors,' " *Lebron*, 27 F.3d at 944 (quoting *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988)). " '[S]ervices which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization.' " *Id.* (quoting *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1253 (5th Cir.1986)). *See also In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr.S.D.Cal.1988) ("The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate.").

In attempting to show that a substantial contribution has been made, creditors must overcome the presumption that they are acting in their own self-interest, and not for the benefit of the estate as a whole. *In re Public Service Co. of New Hampshire*, 160 B.R. 404, 452–53 (Bankr.D.N.H.1993). Although there is some mix of authority on this point, it is my opinion that the existence of motivating self-interest does not, by itself, preclude a finding that a party-in-interest made a substantial contribution. *Compare In re Lister*, 846 F.2d at 57 ("Administrative expenses incurred prior to the filing of a bankruptcy petition are compensable under 11 U.S.C. § 503(b)(3)(D), if those expenses are incurred in efforts which were intended to benefit, and which did directly benefit, the bankruptcy estate.") and *In re Am. 3001 Telecommunications, Inc.*, 79 B.R. 271, 273 (Bankr.N.D.Tex.1987) ("Legal services provided solely for the benefit of a creditor or client are not compensable from the bankruptcy estate.") with *Lebron*, 27 F.3d at 944 (recognizing that most activities of an interested party that contribute to the estate will also benefit that party, but stating that that fact alone will not preclude reimbursement); *Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. at 296 (same); *Geriatrics Nursing Home, Inc.*, 195 B.R. at 38 (although fact that creditor is acting in self-interest not sufficient basis to deny substantial contribution claim, creditor "must demonstrate that its efforts transcended self protection"); and *In re Speeds Billiards & Games, Inc.*, 149 B.R. 434, 437 (Bankr.E.D.Tex.1993) ("A creditor who has made a substantial contribution to a case is entitled to an administrative expense award even if that creditor's involvement in the case is not motivated by altruism.") (citing *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 n. 3) (Bankr.D.Minn.1987).

*In re Oxford Homes, Inc.*, 204 B.R. 264, 268 (Bankr.D.Maine 1997) at fn. 16.

Prior to the decision in *Oxford Homes*, courts strictly scrutinized a creditor's intent in taking actions which allegedly provided substantial benefit to the estate. *See Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988) (explaining that creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole); *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 944 (3rd Cir.1994) (explaining that benefit to the estate must be more than an incidental one arising out of the pursuit of self-interest); *In re Public Service Co. of New Hampshire*, 160 B.R. 404, 452 (Bankr.D.N.H.1993) (noting that creditors normally act in their own economic self-interest and any incidental benefit to the estate is a by-product of their pursuit of their own interest).

In *Lister*, the Tenth Circuit stated that an administrative expense could not be awarded for work that was intended to benefit the creditor, even if the estate realized a benefit. *Lister*, 846 F.2d at 57. The *Lebron* and *PSNH* decisions, slightly eased that standard in stating that actions intended solely for the benefit of a creditor might, under very rare circumstances, if ever, give rise to an administrative expense under section 503. *Lebron*, 27 F.3d at 944; *PSNH*, 160 B.R. at 453.

Recently, two circuit courts of appeal have retreated from strict scrutiny of a creditor's intent in favor of a results oriented approach which instead focuses on the impact and value of the creditor's contribution to the reorganization. The Fifth Circuit has noted that "nothing in the Bankruptcy Code requires a self-depreciating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503." *Hall Fin. Group, Inc. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 672 (5th Cir. 1997), *cert. denied* 522 U.S. 815, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997). In the absence of a statutory definition the court found that the phrase "substantial contribution" should be given its ordinary every day meaning as a contribution that is "considerable in amount, value or worth." *Id.* at 673 (citing Webster's Third New International Dictionary 2280 (4th Ed.1976)). The court held that "a creditor's motive in taking actions that benefit the estate has little relevance in the determination whether the creditor has incurred actual and necessary expenses in making a substantial contribution to a case." *Id.* The Eleventh Circuit has observed that "a conflict has developed among the circuits regarding whether the motivation behind a creditor's actions should disqualify him from receiving fees where a contribution has been made to the resolution of the bankruptcy proceeding." *In re Celotex Corp.*, 227 F.3d 1336, 1338

(11th Cir.2000). The Eleventh Circuit adopted the standard articulated by the Fifth Circuit stating that "[t]o impose an altruism requirement on the ability to obtain administrative expenses under § 503(b)(3)–(4) would effectively render the section meaningless as to creditors." *Id.* at 1339.

■ This Court finds that the results oriented approach in the *DP Partners* and *Celotex* decisions, which place greater importance on the value of a creditor's contribution to the resolution of a chapter 11 proceeding rather than on the creditor's motivation or intent in making the contribution, is more reflective of the language of the statute and is the better approach. However, the determination of what constitutes a substantial contribution must of necessity be left to a case-by-case determination. A court must weigh the cost of the claimed fees and expenses against the benefits to the estate which flow directly from those actions. *DP Partners*, 106 F.3d at 673. Actions which only benefit a portion of the estate or a limited class of creditors are necessarily diminished in weight. *Id.* The services and expenses for which compensation is sought must have resulted in a direct, significant and demonstrable benefit to the estate. *DP Partners*, 106 F.3d at 670 (holding that creditor whose unsuccessful competing plan resulted in an increase in the value of estate assets by $3,000,000 made a substantial contribution); *In re Kidron, Inc.*, 278 B.R. 626, 630 (Bankr.M.D.Fla.2002) (holding that, although incurred in conjunction with a creditor's participation in the purchase of a debtor's assets, expenses which also directly, materially and demonstrably contributed to the process of achieving a successful sale for the benefit of the estate are compensable); *In re McLean Industries, Inc.*, 88 B.R. 36, 39 (Bankr.S.D.N.Y.1988) (finding that creditor who raised the initial objection to the propriety of the sale of the

debtor's assets which resulted in an increase of $1,150,000 in proceeds for the estate made a substantial contribution).

■■■ Extensive participation alone is insufficient to justify an award. Compensable services are those that foster and enhance—rather than retard and interrupt—the progress of reorganization. *Big Rivers Electric*, 233 B.R. at 751 (finding that while some of creditor's actions may have benefitted the estate, any benefit was overshadowed by the costs associated with the creditor's attempts to interrupt and delay the chapter 11 proceeding); *In re Granite Partners, L.P.*, 213 B.R. 440, 445–46 (Bankr.S.D.N.Y.1997); *In re Ace Fin. Co.*, 69 B.R. 827, 830 (Bankr.N.D.Ohio 1987). Services that duplicate those rendered by the debtor, a committee or other court appointed officers, absent proof that they are unwilling or unable to act, are not compensable because they entail an excessive and undue burden on the estate. *Granite Partners*, 213 B.R. at 446. Creditors who make a substantial contribution to the formulation and confirmation of a plan of reorganization may be denied fees if the disclosure statement did not put creditors on notice that such fees might be sought. *See Oxford Homes*, 204 B.R. at 270; *In re Diberto*, 164 B.R. 1, 3 (Bankr. D.N.H.1993).

### B. The Shaines & McEachern Fee Application.

Shaines & McEachern, P.A. has applied for allowance of $5,235.00 in fees and $120.35 in expenses under section 503(b) of the Bankruptcy Code for services rendered to Camp Grenada, LLC as a creditor and prospective purchaser of the Debtors' assets.[3] Under sections 503(b)(3) and (4), the Court may award payment to a creditor for its professional and other expenses incurred in making a substantial contribution to a chapter 11 case. *In re Big Rivers Elec. Co.*, 233 B.R. 739, 746 (W.D.Ky.1998). However, the fee application before the Court is from Shaines & McEachern, P.A. (the "Applicant"), counsel for the creditor, Camp Grenada, LLC. The Applicant is not a creditor and, therefore, is not within the class of persons authorized to have their expenses allowed as administrative expenses under section 503(b). The application should have been filed by Camp Grenada, LLC, the creditor who allegedly made a substantial contribution to the cases. *See Oxford Homes*, 204 B.R. at 267; *In re Brown*, 147 B.R. 55, 58 (Bankr.D.Mass.1992). However, the Court shall consider the application to have been made "on behalf of" the creditor client in order that the Court may deal with the issue on its merits "without multiplying proceedings by standing on formalities." *See Oxford Homes*, 204 B.R. at 268. Therefore, the threshold question before the Court is whether the creditor client, Camp Grenada, LLC, made a substantial contribution to the Debtors' reorganization.

■■■ Camp Grenada's involvement in this case resulted in an increase in the

**3.** Section 503(b) of the Bankruptcy Code provides:

> After notice and a hearing, there shall be allowed administrative expenses ..., including ...
> (3) the actual and necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by ... a creditor ..., in making a substantial contribution in a case under chapter 9 or 11 of this title; [and]
> (4) reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based upon the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

distributions to unsecured creditors from the fifty percent dividend initially proposed by the Debtors to a dividend of one hundred percent plus interest. The dollar value of this increase to the unsecured creditor class was from the $35,805.63 originally proposed by the Debtors to $104,438.87 for an increase of $68,633.24 or two hundred ninety percent. The Debtors contend that the requirements of the absolute priority rule would have resulted in the same increase without the involvement of Camp Grenada. While there is some merit to the Debtors' argument, the fact remains that the Debtors and their chosen buyer attempted to complete the liquidating plan at the lowest possible cost over and above the secured real estate mortgage claim. While the Court understands that the buyer of the Debtors' assets did not wish to pay any more than it needed to pay, the presence and persistence of Camp Grenada resulted in a rapid increase in the payout to unsecured creditors and the confirmation of a successful liquidating plan of reorganization.

The fees and expenses sought by Camp Grenada ($5,355.35) are less than eight percent of the increase in the dividend to unsecured creditors during its participation in the plan confirmation process in this case. While the Court has no doubt that Camp Grenada was pursuing its own interests in attempting to purchase the Debtors' assets, that pursuit resulted in not only an increase in the dividend to unsecured creditors, but also in the quick confirmation of the Debtors' final plan and the distribution of a one hundred percent dividend plus interest to unsecured creditors. This case was a small chapter 11 and never had a creditors' committee to review the Debtors' initial plan, perform any independent evaluation of the Debtors' assets or seek competitive bids when the Debtors proposed a liquidating plan of reorganization. Camp Grenada's actions, in

the pursuit of its own interests, resulted in an outcome in this case at the upper end of what an active creditors' committee could have obtained. In the absence of a creditors' committee, Camp Grenada's efforts were not duplicative of any other professionals in this case.

No objection has been raised to the reasonableness of the hours expended or the rate charged by Camp Grenada's counsel. After reviewing the detailed billing information submitted by Camp Grenada's counsel, the Court finds that the hours expended and the rates charged were reasonable. However, the Court believes that the services rendered prior to December 27, 2002 were solely for the purpose of advising Camp Grenada on what actions, if any, it could undertake to become the successful buyer of the Debtors' assets. Such services did not provide any substantial contribution to the resolution of this case. However, the Court finds that the fees and expenses rendered on and after December 27, 2002 in Camp Grenada's participation in the formulation and confirmation of the Debtors' plan of reorganization did provide a substantial contribution to the resolution of this case. The fees and expenses incurred on and after December 27, 2002 amount to $4,485.00 in fees and $120.35 in expenses for a total of $4,605.35.

In effect, Camp Grenada's participation resulted in the best possible result for unsecured creditors in an efficient and cost effective manner without duplicating the efforts of any other professionals retained by the bankruptcy estate. An active and well represented creditors' committee, which was never appointed in this case, could not have achieved a better result at lower cost. The Court finds that Camp Grenada's participation in the plan formulation and confirmation process resulted in a substantial contribution to the resolution of this case and shall allow it reimburse-

ment for $4,485.00 in fees and $120.35 in expenses.

## C. Debtors' Counsel Fee Application.

 Debtors' counsel is seeking $50,000.00 in fees and $1,823.19 in expenses. The fee application by Debtors' counsel reflects 268.2 hours totaling $53,640.00 at an average hourly rate of $200.00. No objection has been raised to the reasonableness of the hours expended, the hourly rate charged or the expenses requested. The United States Trustee (the "Trustee") has questioned the work by Debtors' counsel in proposing a plan of reorganization which did not satisfy the absolute priority rule. However, the Trustee has not articulated any specific reduction which the Court should apply to this fee application other than reducing the request by the amount awarded to Camp Grenada's counsel.

The Court finds that the hours expended and hourly rate charged by Debtors' counsel in this case are reasonable. Other than the Trustee's objection, no objection to the fee application has been made. In this case, the Court finds the absence of other objections significant because it is the Debtors' principal, not the creditors, that will bear the cost of any fee awarded. At the hearing on the fee application no evidence was offered which would demonstrate directly or indirectly that Debtors' counsel was seeking to inappropriately reward the Debtors' principal at the expense of the creditors. The Debtors' initial plan was filed to counter a plan filed by its secured real estate mortgage lender which offered unsecured creditors only thirty-five percent. The Debtors' initial plan was amended upward at the first hearing on the Debtors' disclosure statement. Accordingly, the Court will not penalize counsel for reacting to that initial creditor's plan and arguably pursuing the interests of its client and the proposed buyer. If Debtors' counsel had resisted responding to the Trustee's objection that the Debtors' initial plan violated the absolute priority rule, the Court would react differently.

The Court finds that the fees and expenses requested by Debtors' counsel are reasonable in amount based upon the results obtained in this case. The Debtors' counsel is awarded $50,000.00 in fees and $1,823.19 in expenses.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court awards Camp Grenada reimbursement for fees in the amount of $4,485.00 and expenses in the amount of $120.35 for a substantial contribution to the resolution of this bankruptcy case and allows the final fee application of Debtors' counsel for fees in the amount of $50,000.00 and expenses of $1,823.19. The Court shall issue a separate order.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.