**In re UNITED CONTAINER LLC, Debtor.**

**No. 8:01–bk–22614–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 23, 2003.

Gary M. Freedman, Tabas, Freedman & Soloff, P.A., Miami, FL, for Creditor, E.S. Bankest, LLC.

David M. Landis, Jon E. Kane, Mateer & Harbert, P.A., Orlando, FL, for Creditor, Systec Corporation.

Sheldon E. Richie, Richie & Gueringer, P.C., Austin, TX, for Creditor, Wayne Ingram.

Michael C. Sasso, Dempsey & Sasso, P.C., Orlando, FL, for Creditor, Wayne Ingram.

Jeffrey W. Warren, Carrie Beth Baris, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for the Chapter 7 Trustee, Steven S. Oscher.

**ORDER ON (1) E.S. BANKEST, LLC'S MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE, (2) SYSTEC CORPORATION'S APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE, AND (3) WAYNE INGRAM'S MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider (1) E.S. Bankest, LLC's Motion for Payment of Administrative Expense, (2) Systec Corporation's Application for Allowance of Administrative Expense, and (3) Wayne Ingram's Motion for Payment of Administrative Expense.

E.S. Bankest, LLC, Systec Corporation, and Wayne Ingram (collectively, the "Creditors") seek the allowance of their attorney's fees and costs as administrative expense claims in this case, based on their "substantial contribution" to the estate pursuant to § 503(b)(3)(D) of the Bankruptcy Code.

## Table of Contents

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

The Applications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
    A.     E.S. Bankest, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
    B.     Wayne Ingram . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
    C.     Systec Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

    I.   Section 503(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
       A.  General principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
       B.  A "substantial contribution" "in a case under chapter 11" . . . . . . . . . . . . . . 126

    II.  The post-conversion period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
       A.  General principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
       B.  Employment under § 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
       C.  Retroactive approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129
          1.  The failure to obtain prior approval is excusable . . . . . . . . . . . . . . . . . . . 130
          2.  Applications to employ would have been approved if timely filed . . . . . 130

    III.  The allowed amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

## Background

The Debtor, United Container, LLC, filed a petition under chapter 11 of the Bankruptcy Code on December 6, 2001. The petition was not accompanied by a list of creditors or schedule of assets and liabilities, as required ·by Rule 1007 of the Federal Rules of Bankruptcy Procedure.

Andrew Todd Bullock was the president and Managing Member of the Debtor at the time that the petition was filed.

On January 11, 2002, the United States trustee filed a Motion to Dismiss or Convert, or in the Alternative, for the Appointment of a Chapter 11 Trustee. (Doc. 38A).

On January 15, 2002, E.S. Bankest, LLC (E.S. Bankest) filed a Motion to Convert the Case to a Chapter 7. (Doc. 44). A Supplement to the Motion was filed three days later, on January 18, 2002. (Doc. 57). Systec Corporation (Systec) filed a Joinder in E.S. Bankest's Motion to Convert. (Doc. 58).

On January 22, 2002, the Court entered an Order converting the case from a chapter 11 case to a chapter 7 case. (Doc. 60). R. Jay Harpley, a member of the panel of trustees established under 28 U.S.C. § 586(a)(1), was appointed by the United States trustee as the Interim chapter 7 Trustee in the case.

On January 22, 2002, the same date that the case was converted, E.S. Bankest and Systec filed various Motions to conduct examinations pursuant to Rule 2004 of seven individuals associated with the Debtor. (Docs. 61 through 67). On January 23, 2002, the Court entered Orders granting the Motions, and directing the individuals to appear for the examinations. (Docs. 68 through 74).

At least five 2004 examinations were conducted over a three-day period between February 11 and February 14, 2002. Although the examinations took place at the office of the interim trustee's attorney, it appears that neither the interim trustee nor his attorney participated significantly in the proceedings. Instead, counsel for the Creditors undertook the examinations and questioned the individuals. Two primary areas of inquiry consisted of the fraudulent activities and transfers of the Debtor, and the existence of certain insurance policies on the life of Andrew Todd Bullock.

Andrew Todd Bullock died on or about February 14, 2002.

Shortly after the conclusion of the 2004 examinations, the Creditors determined that the case warranted the involvement of a permanent trustee with forensic accounting experience to investigate the Debtor's

transactions and trace its assets. It appears that, after some preliminary research, Systec's attorney made the initial contact with Steven S. Oscher (Oscher), a certified public accountant. The other Creditors thereafter reviewed Oscher's qualifications and supported his entry into the case.

On February 20, 2002, a § 341 meeting of creditors was commenced, but not concluded, in the chapter 7 case. Counsel for each of the Creditors attended the § 341 meeting. At the meeting, the creditors elected Oscher as the chapter 7 trustee. As indicated above, Systec contends that its counsel was "in large part responsible for the initial consultations with Mr. Oscher to bring him into the case." (Doc. 309, p. 5).

On February 27, 2002, the United States Trustee filed a Report of Disputed Election. (Doc. 177). In the Report and an Amended Report filed the next day, the United States Trustee took the position that the election of Oscher was invalid. The United States Trustee's primary concerns were whether the creditors participating in the election were eligible to vote, and if so, whether they represented twenty percent (20%) of the eligible claims as required by § 702(b) of the Bankruptcy Code.

On March 1, 2002, E.S. Bankest filed a Motion for Resolution of United States Trustee's Amended Report of Disputed Election. (Doc. 181).

On March 11, 2002, following a hearing conducted on March 5, 2002, the Court entered an Order approving and confirming the election of Steven S. Oscher as the chapter 7 trustee. (Doc. 213).

On June 18, 2002, Oscher, as Trustee, filed a Motion for Entry of Order Approving Settlement Agreement with Respect to Life Insurance Policies. (Doc. 324). In the Motion, Oscher asserted that numerous insurance policies had been purchased on the life of Andrew Todd Bullock, and that the policies had become payable upon Mr. Bullock's death. Oscher requested the Court's approval of a proposed settlement that had been reached among all of the parties who claimed an interest in the proceeds of the life insurance policies.

On August 30, 2002, the Court entered an Order Granting the Trustee's Motion for Order Approving Settlement Agreement with Respect to Life Insurance Policies. (Doc. 399). Generally, the Settlement Agreement provided for the allocation and distribution of the proceeds of the life insurance policies as between the chapter 7 estate and Andrew Todd Bullock's family members.

The Interim Asset Report filed by the Chapter 7 Trustee on April 30, 2003, reflects that the estate had collected the total sum of $14,591,957.21, before disbursements. (Doc. 511). Approximately $1,007,869.06 of this total sum was collected from the liquidation of the Debtor's physical assets, and approximately $13,491,454.28 of the total sum represented the proceeds of the various insurance policies on the life of Andrew Todd Bullock. As of the date of the Interim Report, approximately $9,491,885.25 remained in the estate for distribution.

It is generally agreed that the insurance policies on the life of Mr. Bullock constituted the primary assets of the estate.

### The Applications

Three Applications for the Allowance of Administrative Expense Claims have been filed in this case pursuant to § 503(b)(3)(D) of the Bankruptcy Code.

### A. E.S. Bankest, LLC

E.S. Bankest seeks an award of attorney's fees in the amount of $49,565.00, plus

reimbursement of costs in the amount of $5,251.07, for a total award of $54,816.07.

The Application covers services performed during the two and one-half month period commencing on January 7, 2002, and ending on March 22, 2002. During this period, E.S. Bankest's attorneys provided 180.6 hours of service, at rates ranging from $110 per hour to $310 per hour. The majority of the services were provided by Gary M. Freedman, Esquire, at a rate of $285 per hour.

E.S. Bankest contends that its attorneys scheduled and conducted at least six 2004 examinations during the Application period, that they spearheaded the election of a new Trustee after the conversion of the case to a chapter 7, and that they have been instrumental in researching the estate's ability to recover the proceeds of the insurance policies on the life of Andrew Todd Bullock.

### B. Wayne Ingram

Ingram seeks an award of attorney's fees in the amount of $45,536.00, plus the reimbursement of costs in the amount of $5,000.00, for a total award of $50,536.00. (Transcript of July 9, 2003, hearing, pp. 55, 71, 72).

Ingram's Application, as modified at the hearing, covers services performed during the period commencing on December 12, 2001, and continuing until April of 2002.

Ingram contends that its attorneys participated in at least four 2004 examinations, participated in the election of the new Trustee, and researched the estate's ability to recover the proceeds of the insurance policies on the life of Andrew Todd Bullock.

### C. Systec Corporation

Systec seeks an award of attorney's fees in the amount of $25,742.50, plus reim-

bursement of costs in the amount of $4,439.05, for a total award of $30,181.55.

The Application covers services performed during the period commencing on January 3, 2002, and ending on February 20, 2002. During this period, Systec's attorneys provided 98.5 hours of services, at rates ranging from $225 per hour to $265 per hour. The majority of the services were provided by David M. Landis, Esquire, at a rate of $265 per hour.

Systec contends that its attorneys participated in extensive discovery during the Application period, that they participated in the election of a new Trustee after the conversion of the case, and that they were instrumental in the location of assets for the estate.

### Discussion

### I. Section 503(b)(3)(D)

#### A. General principles

Section 503(b)(3)(D) of the Bankruptcy Code provides as follows:

**11 U.S.C. § 503. Allowance of administrative expenses**

. . . . .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

. . . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

. . . . .

(D) *a creditor*, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, *in making a substantial contribu-*

*tion in a case under chapter 9 or 11 of this title.*

11 U.S.C. § 503(b)(3)(D)(Emphasis supplied).

The term "substantial contribution" is not specifically defined in the Bankruptcy Code. *In re Celotex Corporation,* 227 F.3d 1336, 1338 (11th Cir.2000).

■ Administrative expenses under § 503(b), however, such as claims based on a creditor's "substantial contribution," are "priority claims paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants. Accordingly, § 503(b) is strictly construed." *In re Alumni Hotel Corporation,* 203 B.R. 624, 630 (Bankr.E.D.Mich.1996). See also *In re Communications Management & Information, Inc.,* 172 B.R. 136, 141 (Bankr.N.D.Ga.1994)("[C]laims for administrative expense pursuant to § 503(b) are subject to strict scrutiny.").

■ "The burden of demonstrating substantial contribution is on the applicant which must establish same by a preponderance of the evidence." *In re Burgoyne, Inc.,* 2002 WL 31685730, at *3 (Bankr. E.D.Pa.).

■ The Bankruptcy Court in this District recently recognized a three-part test to determine whether a creditor made a substantial contribution to a case.

Importantly, by its own terms, such an award is predicated on the contribution being "substantial." This term is not defined in the Bankruptcy Code. It is clear, however, that the courts that have analyzed what kinds of contribution will be considered "substantial" have generally concluded that creditors' actions that "incidentally" benefit the estate are not "substantial" for purposes of section 503(b)(3)(D). Rather, the courts have required a showing that the creditors' actions must: (1) "directly and

demonstrably benefit" the estate, ... (2) "foster and enhance, rather than retard or interrupt the progress of the reorganization," ... and (3) be "considerable in amount, value or worth."

*In re Kidron, Inc.,* 278 B.R. 626, 632–33 (Bankr.M.D.Fla.2002). Consequently, expenses are allowable under § 503(b)(3)(D) only if they "directly and materially contributed" to the reorganization. *In re Celotex Corp.,* 227 F.3d at 1338–39. "The services and expenses for which compensation is sought must have resulted in a direct, significant and demonstrable benefit to the estate." *In re Pow Wow River Campground,* 296 B.R. 81, 86 (Bankr. D.N.H.2003). "The applicable test in determining whether there has been a 'substantial contribution' is whether the efforts of the claimant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *In re Burgoyne, Inc.,* 2002 WL 31685730, at *3.

■ A creditor's motive in taking actions that benefit the estate has little relevance in determining whether the creditor made a substantial contribution within the meaning of § 503(b)(3)(D). *In re Celotex Corp.,* 227 F.3d at 1339. Instead, courts generally place greater weight on the value of the creditor's contribution to the resolution of the chapter 11 case, so that a determination of whether a creditor's efforts constitute a "substantial contribution" should be made on a case-by-case basis. *In re Pow Wow River Campground,* 296 B.R. at 86–87. In determining whether a creditor has made a substantial contribution, the court should focus on the "precise nature of the services rendered." *In re Kidron, Inc.,* 278 B.R. at 633.

### B. A "substantial contribution" "in a case under chapter 11"

■ In this case, the Court finds that the Creditors are entitled to the allowance

of administrative expense claims for the period commencing on December 6, 2001 (the petition date) and continuing until January 22, 2002 (the date the case was converted) pursuant to § 503(b)(3)(D) of the Bankruptcy Code, based upon their substantial contribution to the estate.

First, the Court finds that the Creditors directly and significantly benefited the bankruptcy estate during the first six weeks of the case.

The case was problematic from its inception, due primarily to the Debtor's complete failure to provide any meaningful leadership or information, and its unwillingness to comply with the rules and procedures that govern bankruptcy cases. Examples of the Debtor's failure include:

1. No original signature of an individual authorized to act on the Debtor's behalf appears on the petition.

2. The Debtor did not file a list of creditors with the petition. Additionally, the Debtor did not file its schedule of assets and liabilities, statement of financial affairs, or other statements as required by Rule 1007 of the Federal Rules of Bankruptcy Procedure. Although the Debtor filed a Motion for Extension of Time to file its schedules, the Court denied the request because the Motion was not timely filed, and because the Debtor did not show "good cause" for the requested extension as required by Rule 1007(c). Finally, the Debtor did not file its schedules even after the denial of its Motion, and in fact *never* filed the required documents. (No schedules were presented in this case until Oscher, as Trustee, filed them after the conversion of the case to a chapter 7.)

3. The Debtor failed to produce a qualified officer to testify at the § 341 meeting on January 11, 2002.

4. The Debtor's attorneys of record were located across the state from the Court in which the bankruptcy case was filed. The Debtor's attorneys did not appear in person for significant hearings in this case, but instead appeared only by telephone conference. Further, the attorney who did appear by telephone had little knowledge of the Debtor's operations, and was unable to respond to basic inquiries regarding the Debtor's financial affairs. (Doc. 46, Transcript of hearing on January 4, 2002). Debtor's counsel filed a Motion to Withdraw on February 22, 2002, stating in part that the Debtor's principal had been uncooperative and non-communicative since the case was filed. (Doc. 150).

In short, the Debtor was completely elusive in the critical early weeks of the case, with the result that no financial information was filed by the Debtor and no person was available as a representative of the Debtor to respond to the pressing concerns of either the Court or creditors.

Considering this background, and having presided over the case from its commencement, the Court is satisfied that the Creditors filled the leadership void that existed in the early stages of the case, and that the financial aspect of the case was salvaged only as a result of their efforts.

Further, the Debtor filed a Motion to Dismiss the chapter 11 case on January 16, 2002, after both the United States Trustee and E.S. Bankest had filed Motions to Convert the case to a chapter 7. (Doc. 48). It is clear that the Debtor's Motion created a genuine risk for the creditors, since a dismissal of the case would mean that the Debtor's transactions would not be examined under court supervision, and the likelihood of any recovery for the creditors would be severely diminished.

The specific efforts of the Creditors during the chapter 11 case have been de-

scribed in the Background provided above, and will not be repeated in detail. Generally, however, while the case was pending as a chapter 11 case, the Creditors worked toward the conversion of the case to a chapter 7, opposed the Debtor's Motion to Dismiss the case, and prepared to take the 2004 examinations of individuals with knowledge of the Debtor's financial affairs, which ultimately led to the discovery of recoverable assets. The Court is satisfied that conversion of the case to a chapter 7 was in the best interest of the estate and the general body of creditors. Consequently, the Court finds that the Creditors' efforts produced a direct, significant, and demonstrable benefit to the estate.

The Creditors are entitled to the allowance of an administrative expense claim for the period commencing on December 6, 2001, and continuing until January 22, 2002, based upon their "substantial contribution in a case under chapter 11," as provided by § 503(b)(3)(D) of the Bankruptcy Code.

## II. The post-conversion period

### A. General principles

■ By its terms, § 503(b)(3)(D) of the Bankruptcy Code authorizes the allowance of an administrative expense claim to creditors "in making a substantial contribution in a case under chapter 9 or 11 of this title."

> [M]aking a substantial contribution to a case is grounds for reimbursement of expenses to a creditor *only when the case is a case under chapter 9 or 11 of the Bankruptcy Code.* As § 503(b)(3)(D) is expressly limited to cases under chapters 9 or 11 of the Bankruptcy Code, and this is a case under chapter 7 of the Bankruptcy Code, the substantial contribution ground of recovering expense reimbursement does not apply.

*In re Blount,* 276 B.R. 753, 763–64 (Bankr.M.D.La.2002)(Emphasis supplied). In other words, administrative expense status under § 503(b)(3)(D) is available only for contributions in chapter 9 or chapter 11 cases, but not in chapter 7 cases. Further, such status is not authorized in chapter 7 cases, regardless of whether the case was initially filed as a chapter 7, or was later converted from another chapter. "Section 503(b)(3)(D) does not authorize fee awards for expenses after a case is converted from Chapter 11 to Chapter 7." *In re Alumni Hotel Corporation,* 203 B.R. 624, 631 (Bankr.E.D.Mich.1996).

The case under consideration was initially filed as a chapter 11 case, and converted to a case under chapter 7 on January 22, 2002. Consequently, the Creditors are not entitled to the allowance of an administrative claim under § 503(b)(3)(D) for those services that were performed after January 22, 2002.

### B. Employment under § 327

At the hearing on the Applications, however, all of the Creditors requested the nunc pro tunc approval of their employment by the estate. Generally, professional persons who are employed by the trustee pursuant to § 327 of the Bankruptcy Code may be awarded reasonable compensation for their services pursuant to § 330 of the Bankruptcy Code. Section 327(a) provides:

> **11 U.S.C. § 327. Employment of professional persons**
>
> (a) Except as otherwise provided in this section, the trustee, *with the court's approval,* may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist

the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a)(Emphasis supplied). Section 330(a)(1) provides:

**11 U.S.C. § 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, *a professional person employed under section 327* or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(Emphasis supplied).

The combined effect of these statutes is to authorize an award of compensation to professionals who have been employed by the trustee, and whose employment has been approved by the Court.

■ As a general rule, however, professional persons are not entitled to any compensation for postpetition services if they did not obtain prior approval of their employment from the Court. *In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859 (Bankr.M.D.Fla.2000)(quoting *In re Monument Auto Detail, Inc.*, 226 B.R. 219 (9th Cir. BAP 1998) and *In re W.T. Mayfield Sons Trucking Co., Inc.*, 225 B.R. 818 (Bankr.N.D.Ga.1998)). See also *In re Stoico Restaurant Group, Inc.*, 271 B.R. 655 (Bankr.D.Kan.2002).

**C. Retroactive approval**

In this case, the Creditors acknowledge that they did not obtain prior approval of their employment from the Court. The Creditors therefore request the approval of their employment nunc pro tunc to the first date that they appeared in the case. (Transcript of July 9, 2003, Hearing, pp. 28, 53, 73).

■ Courts generally agree that the employment of a professional may be approved retroactively, provided that extraordinary circumstances are present in the case. *In re Aultman Enterprises*, 264 B.R. 485, 489 (E.D.Tenn.2001). See also *In re Little Greek Restaurant, Inc.*, 205 B.R. 484, 486–87 (Bankr.E.D.La.1996)("[B]ankruptcy courts retain equitable powers, in the exercise of their sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc.")

■ Bankruptcy Courts in this district typically have applied a two-part test to determine whether retroactive approval is justified.

To obtain retroactive approval of the employment of a professional under Section 327 of the Bankruptcy Code, a trustee must meet two general requirements. "First, nunc pro tunc approval of an application of a professional can be granted only if the failure to file a timely application was due to excusable neglect.... Second, nunc pro tunc approval requires a showing that the applicant would have been approved initially if a timely application had been filed."

*In re Princeton Medical Management, Inc.*, 249 B.R. 813, 815 (Bankr.M.D.Fla.2000)(quoting *In re Jones*, 138 B.R. 289, 293 (Bankr.M.D.Fla.1992) and citing *In re Smith*, 125 B.R. 841, 842 (Bankr.M.D.Fla.1991)). See also *In re Bicoastal Corporation*, 118 B.R. 855, 858 (Bankr.M.D.Fla.1990)("First, the applicant must meet the disinterested requirement of § 327(a) of the Bankruptcy Code, and it must be determined that the applicant

would have been appointed initially. Second, the Court must determine that the circumstances are so extraordinary that retroactive approval is warranted.")

■■■ In this case, the Court finds that the employment of the Creditor's counsel should be approved retroactively for the period commencing on January 22, 2002 (the date that the case was converted), and continuing until March 11, 2002 (the date that the Court entered its Order approving the election of Oscher as the permanent Trustee).

### 1. The failure to obtain prior approval is excusable

First, the Court is satisfied that the Creditors' failure to obtain the prior approval of their employment is excusable due to the extraordinary circumstances that are present in this case.

The time period for which such employment is authorized is extremely limited, spanning only from January 22, 2002, through March 11, 2002. The case was extremely active during that seven-week period, as evidenced by the fact that more than 160 entries were made on the docket between those dates.

Further, immediately following the conversion on January 22, 2002, information was being gathered, and facts were developing, at an unusually rapid rate in the case. The Creditors could not have known on January 22, 2002, for example, that the principal of the Debtor would die on February 14, 2002, that numerous insurance policies had been purchased on the principal's life, or that the efforts of the panel trustee to investigate the estate's assets would be largely ineffective. Consequently, it would be inequitable to penalize the Creditors for failing to foresee the need to seek the employment of their attorneys as of January 22.

Additionally, for the reasons set forth above, the Court finds that the services of the Creditors' counsel were of substantial benefit to the estate. It is undisputed that the Creditors organized and undertook the initial discovery in the case, which ultimately uncovered the existence of the life insurance policies that constitute the primary assets of the estate. It is also undisputed that the Creditors were responsible for contacting Oscher, whose qualifications and expertise are unchallenged, and for ensuring his election as the permanent chapter 7 trustee. Oscher has successfully recovered in excess of $9,000,000.00 for the estate.

In summary, the Creditors have shown that their failure to obtain the prior approval of their employment is excusable, and that extraordinary circumstances are present in this case that justify the retroactive approval of their employment.

### 2. Applications to employ would have been approved if timely filed

Second, the Court finds that the employment of the Creditors' attorneys would have been approved if applications had been filed on January 22, 2002. As set forth above, § 327 provides that a professional person may be employed by the trustee, provided only that he does not hold an interest adverse to the estate and that he is disinterested. Section 327(c) provides:

**11 U.S.C. § 327. Employment of professional persons**

.     .     .     .     .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case

the court shall disapprove such employment if there is an actual conflict of interest.
11 U.S.C. § 327(c). Based on this statute, the Creditors' attorneys are not disqualified solely because they represented claimants against the Debtor prior to the filing of the chapter 11 petition.

Further, neither E.S. Bankest nor Systec, nor their attorneys, are insiders of the Debtor. Although Steven Ingram may have been an officer of the Debtor in the past, it appears that his position with the company was terminated in April of 2000, approximately eight months before the bankruptcy case was filed. (Transcript of July 9, 2002, hearing, pp. 81, 84). Since that time, Ingram has been involved in litigation with the Debtor in Polk County, Florida.

The Court finds that the Creditors are "disinterested" within the meaning of § 327(a) of the Bankruptcy Code.

Additionally, no other creditor has objected to the applications under consideration, the United States Trustee has not opposed the Creditors' employment, and Oscher, as Chapter 7 Trustee, has expressly acknowledged the assistance provided by the Creditors. Under these circumstances, the Court concludes that the applications of the Creditors would have been approved had they been filed on January 22, 2002. See *In re Jarvis*, 53 F.3d 416, 420 (1st Cir.1995)(The services provided by the creditors' attorneys were reasonably necessary for the administration of the estate, the attorneys were well-qualified to perform the services, and the attorneys were disinterested.)

The Creditors have satisfied the two-part test for retroactive approval of their employment. Accordingly, the Creditors' oral requests for approval of their employment nunc pro tunc are granted, and the Creditors are entitled to compensation for the services that they provided from January 22, 2002 (the date that the case was converted), until March 11, 2002 (the date that the Court entered its Order approving the election of Oscher as the permanent Trustee), pursuant to § 330(a) of the Bankruptcy Code.

### III. The allowed amounts

For the reasons set forth above, it is appropriate to enter an order allowing the Creditors an administrative expense claim in the amount of the attorney's fees and expenses that they incurred during the first three months of this case. The award is made pursuant to § 503(b)(3)(D) for the period from December 6, 2001, to January 22, 2002, and pursuant to § 330(a) for the period from January 22, 2002, to March 11, 2002.

■ An award of attorney's fees and costs is not appropriate for the period after March 11, 2002, however, since the permanent Chapter 7 Trustee was in place after that date to manage the case and perform the required discovery and recovery functions. Accordingly, the Court cannot find that the Creditors' efforts after March 11, 2002, were "necessary" within the meaning of § 330(a) of the Bankruptcy Code. *In re Ben Franklin Retail Store, Inc.*, 227 B.R. 268, 271 (Bankr.N.D.Ill. 1998).

In any event, the Court has reviewed the Applications of E.S. Bankest, Systec, and Ingram, including the detailed itemization of the services provided, and makes the following awards for the period prior to March 11, 2002:

1. *E.S. Bankest*—E.S. Bankest is awarded the sum of $45,933.50 as attorney's fees for services provided from January 7, 2002, to March 11, 2002, and the sum of $4,887.32 as expenses incurred dur-

ing the same period, for a total award of $50,820.82.

2. *Systec*—Systec is awarded the sum of $25,742.50 as attorney's fees for services provided from January 3, 2002, to February 20, 2002, as set forth in its Application, and the sum of $4,439.05 as expenses incurred during the same period, for a total award of $30,181.55.

3. *Ingram*—Ingram is awarded the sum of $45,536.00 as attorney's fees for services provided from December 6, 2001, to March 11, 2002, and the sum of $5,000.00 as expenses incurred during the same period, for a total award of $50,536.00.

## Conclusion

E.S. Bankest, Systec, and Ingram made a substantial contribution to the estate while this case was pending as a chapter 11 case. Consequently, the Creditors are entitled to the allowance of administrative claims under § 503(b)(3)(D) of the Bankruptcy Code in the amount of the attorney's fees and costs that they incurred from December 6, 2001, until January 22, 2002, the date that the case was converted from a chapter 11 to a chapter 7.

Additionally, the Court finds that (1) it would have approved the employment of the Creditors' attorneys if applications requesting such employment had been filed on January 22, 2002, and that (2) extraordinary circumstances are present in this case that excuse the Creditors' failure to obtain prior approval of their employment, and that justify the retroactive approval of such employment. Pursuant to § 330(a) of the Bankruptcy Code, therefore, the Creditors are entitled to an award of the attorney's fees and costs that they incurred for

the period beginning on January 22, 2002, and ending on March 11, 2002, the date that an order was entered approving Steven S. Oscher as the permanent Chapter 7 Trustee in the case.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Payment of Administrative Expense filed by E.S. Bankest, LLC is granted, and E.S. Bankest, LLC is awarded the sum of $50,820.82 as an administrative expense claim pursuant to § 503(b)(3)(D) and § 330(a) of the Bankruptcy Code.

2. The Application for Allowance of Administrative Expense filed by Systec Corporation is approved, and Systec Corporation is awarded the sum of $30,181.55 as an administrative expense claim pursuant to § 503(b)(3)(D) and § 330(a) of the Bankruptcy Code.

3. The Motion for Payment of Administrative Expense filed by Wayne Ingram is granted, and Wayne Ingram is awarded the sum of $50,536.00 as an administrative expense claim pursuant to § 503(b)(3)(D) and § 330(a) of the Bankruptcy Code.

4. Steven S. Oscher, as Chapter 7 Trustee, is directed to pay the allowed administrative expense claims of E.S. Bankest, LLC, Systec Corporation, and Wayne Ingram, within twenty (20) days of the date of this Order.